The SCHOOL DISTRICT OF KANSAS CITY, Missouri, Relator,

v.

The Honorable Lewis W. CLYMER, Respondent.

No. KCD 29495.

Missouri Court of Appeals, Kansas City District.

June 27, 1977.

Application to Transfer Denied Sept. 12, 1977.

Taylor Fields, John C. Noonan and Sheryl B. Etling, for relator; North, Colbert & Fields, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, of counsel.

Norman Humphrey, Jr., Independence, for amicus curiae, Missouri School Bds. Assn.; Burns & Humphrey, Independence, of counsel.

Robert J. Reinhold, Kansas City, for amicus curiae, John E. Keane.

William A. Jolley, Doyle R. Pryor, Donald M. Fehr, Kansas City, for respondent; Jolley, Moran, Walsh, Hager & Gordon, Kansas City, of counsel.

Before PRITCHARD, C. J., and SHANGLER, DIXON, SWOFFORD, WASSERSTROM, SOMERVILLE and TURNAGE, JJ., sitting as the Court en banc.

## ORIGINAL PROCEEDING IN PROHIBITION

PRITCHARD, Chief Judge.

The preliminary rule in prohibition, the return thereto, and the traverse to the return seek to test the power and authority of respondent judge to enter a memorandum and order of May 6, 1977, amending a temporary injunction dated April 13, 1977. The temporary injunction enjoined defendants, Kansas City, Missouri, Federation of Teachers, Local 691 (AFL–CIO), and all of its members from "(1) participating in any strike, concerted walkout, concerted work stoppage, concerted refusal to teach or work, concerted breach of employment contracts, or concerted interference with other teachers' employment contracts; or any other acts of coercion against plaintiff [The School District of Kansas City, Missouri], its employees or its property; (2) establishing or maintaining or participating in any picket line on or around any of plaintiff's schools or other of plaintiff's premises, where the purpose of such picketing is to cause or attempt to cause others to fail or refuse to report for work", in Case No.

CV77–0968 pending in the Circuit Court of Missouri, Sixteenth Judicial Circuit.

A temporary restraining order had been issued against certain named individuals and the teachers' union on March 20, 1977, and an order to show cause why a temporary injunction should not be granted. Many of the teachers had been on strike, as called by the union, after March 21, 1977, which resulted in citations for contempt of the temporary restraining order, and resultant fines and incarceration, which are not really relevant to the issues here presented, except that they were a part of the overall situation which prompted respondent judge to initiate procedures aimed at an amicable resolution of the strike and the return to work of all teachers and other district employees who were involved. Pursuant to this salutary purpose, respondent, on April 15, 1977, appointed Mr. Sal A. Capra, Esq., as a liaison officer, after which "Mr. Capra has been conferring with the parties and to secure a return to an orderly education system and a resolution of the existing controversy." As a result of Mr. Capra's reports and his recommendations, the court entered, without participation by relator and over its objection (as is apparent from its petition for writ of prohibition herein), the May 6, 1977, amendment to the temporary injunction, as follows:

"1. The parties are directed to act in good faith for the purpose of effecting the end of the strike, the cessation of related activities and the normalization of the educational process in the District.

2. All employees, including those terminated since March 20, shall be allowed to return to work without loss of accumulated seniority or District Service and be issued contracts or (in the case of noncertified employees) be otherwise renewed for employment for the 1977–1978 school year with the assurance of the Board and the Administration that all teachers and employees shall be treated equally and fairly and that no one shall be discriminated against because of his or her part in the events that have transpired since March 20, 1977.

3. The Union shall end the strike and all picketing against the School District within forty-eight (48) hours.

4. The District may investigate, evaluate and deal with any alleged acts of teachers or other employees occurring during the period from March 20, 1977, through the end of the strike in accordance with Missouri law and the provisions of this Order. The School District shall not terminate the employment of any teacher or other employee because of strike activities unless it is proven with due process that such person engaged in violent acts causing physical injury to persons or damage to property.

5. With the exception of termination of employment or non-renewal of contracts of employment for violent acts causing physical injury to persons or damage to property, neither the School District nor the Union nor any of its officers, agents, employees or members shall discriminate against any teacher because of that employee's peaceful participation or nonparticipation in the strike.

6. Any teacher not reporting for work within seven (7) calendar days following the end of the strike may be subjected to appropriate proceedings under the Teacher Tenure Act for excessive or unreasonable absence except, however, that such seven (7) calendar day period may be extended for good cause upon written application to the Board of Education.

7. Upon cessation of the strike, the discussion teams representing the School District and the Kansas City, Missouri Federation of Teachers, Local 691 (AFL–CIO) shall meet, confer and discuss in good faith at reasonable times and places in an effort to resolve the issues between said parties, including but not limited to the issues of dues check-off and loan status."

The preliminary rule in prohibition ordered that respondent refrain from enforcing these parts of the memorandum and order, with denoted exceptions:

"(a) All of Paragraph 2, EXCEPT that all employees, including those termi-

nated since March 20, 1977, shall be allowed to return to work without loss of accumulated seniority or District service, except those who have been terminated for various and sundry reasons wholly unrelated to the strike.

(b) All of Paragraph 4, *EXCEPT* that the District may investigate, evaluate and deal with any alleged acts of teachers or other employees occurring during the period from March 20, 1977, through the end of the strike in accordance with Missouri law.

(c) All of paragraph 5."

Apparently relator has in its discretion met with representatives of the teachers' union to discuss problems of mutual interest although § 105.510, RSMo 1969, excepts "teachers of all Missouri schools, colleges and universities" as having the right to join labor organizations and bargain collectively. It is stated in relator's brief that "The Kansas City, Missouri Federation of Teachers, Local 691 (AFL–CIO) (hereinafter referred to as the 'union') is a labor organization which is recognized by Relator as the nonexclusive agent of defendant teachers." No issue is presented as to whether the teachers' union has any right at all to negotiate with relator.

■ It is without question, however, that the teachers' strike was illegal. It was so conceded by respondent's counsel in argument before this court. Although not within the ambit of restrictions against strikes by employees under § 105.530, RSMo 1969 (and § 105.510), the teachers' strike was violative of the common law. *City of Grandview v. Moore*, 481 S.W.2d 555, 557[1, 2] (Mo.App.1972), citing 51A C.J.S. Labor Relations § 306, p. 104; and *St. Louis Teachers Ass'n v. Bd. of Ed., etc.*, 544 S.W.2d 573, 575 (Mo. banc 1976).

What respondent's order of May 6, 1977, does is to invade the legislative prerogatives of the Board of Education of the Kansas City School District. It is provided by Mo.Const., Art. IX, § 1(a), that the "general assembly shall establish and maintain free public schools for the gratuitous instruction of all persons in this state within ages not in excess of twenty-one years as prescribed by law." Pursuant to this constitutional direction the general assembly enacted various statutes establishing and regulating public schools. Among these is relator which comes within § 160.011, RSMo (Supp.1975); and the government and control of it is vested in a nine member Board of Directors (§ 162.471) who are elected by the residents of the district (Kansas City, Missouri) under §§ 162.481 through 162.492. The Board of Directors is empowered by § 171.011 to make "all needful rules and regulations for the organization, grading and government in the school district." As more directly pertinent to the validity of respondent's order of May 6, 1977, are §§ 168.102, et seq., known as the "Teacher Tenure Act", one of the purposes of which is to protect competent and qualified teachers in the security of their positions. *Hirbe v. Hazelwood Sch. Dist.*, 532 S.W.2d 848, 850[1, 2] (Mo.App.1975), and cases and authority cited. Definitions are set forth in § 168.104: The "Board of Education" is the school board or directors having *control* of the affairs of the school district; an "indefinite contract" is one between the district and a permanent teacher who is one having been employed for five successive years in the district; a probationary teacher is one who has been so employed five years or less. The indefinite contract between the district and a permanent (tenured) teacher shall continue for an indefinite period subject only to the conditions enumerated in § 168.-106, but the indefinite contract may be modified for the ensuing year on or before April 15th by the board as to the length of the school year, and in fixing the amount of annual compensation for the following school year as provided by the board's adopted salary schedules applicable to all teachers by § 168.110. The indefinite contract shall not be terminated by the board except for one or more of the causes listed in § 168.114, the notice of charges and procedure for hearing being prescribed by § 168.116 and § 168.118, and the appeals to the circuit and appellate courts is provided by § 168.120. Probationary, non-tenured

teachers may be terminated immediately or at the end of a school year upon the board's compliance with the provisions of § 168.126. Non-certified (nonteacher) employees may be employed by the board under § 168.201 and it may prescribe their powers, duties, compensation and term of office or employment which shall not exceed 3 years.

The foregoing statutes obviously grant to the boards of education or directors of school districts broad powers and discretion in the management of school affairs. It is a continuation of the legislative function first vested in the General Assembly. *State ex inf. Eagleton v. Van Landuyt*, 359 S.W.2d 773, 777[1] (Mo. banc 1962). These broad powers include the matter of tenure (employment and termination of employment, and the fixing of compensation) subject to the guidelines of the statute and to due process of law considerations, and subject also that in the exercise of its powers a board may not act in an unreasonable, arbitrary, capricious or unlawful manner. Other than in these aspects a court may not interfere. *Magenheim v. Board of Education*, 347 S.W.2d 409, 417 (Mo.App.1961); *Adamick v. Ferguson-Florissant School District*, 483 S.W.2d 629, 632[7] (Mo.App.1972). Respondent has exceeded his jurisdiction in interfering with the discretion legislatively granted to relator in dealing with its employees and prohibition therefore lies to prevent enforcement of his May 6, 1977 order (*State ex rel. Taylor v. Nangle*, 360 Mo. 122, 227 S.W.2d 655, 657[4, 5] (banc 1950), it being an interim order from which relator has no remedy by appeal. It should be noted, however, that respondent's May 6, 1977 order had the practical effect of getting a majority of relator's employees back to work, thus ending the strike. In this connection, in view of the increasing number of cases involving discord and disputes between large number of employees and employers in the public sector, and the difficulty in resolving them by use of the remedy of injunction and the resultant harsh remedy of contempt proceedings against those who disobey the injunction, and the impracticality of quickly hearing and disposing of large number of contempt proceedings arising out of a dispute, it may be that the General Assembly, in its wisdom, will continue to address itself to other available solutions to good faith disputes, such as binding arbitration awards, mediation and the like. See the discussion of these possibilities, 48 Am. Jur.2d Labor and Labor Relations, § 1196, p. 750; and 36 Mo.L.Rev. 167 (1971), where at page 181, footnote 49, the author says, "The weight of evidence suggests that the enactment of positive legislation is the best way to harness and direct the energies of public employees eager to have a voice in determining their conditions of work. Such legislation will not eliminate all disputes and may not eliminate all work stoppages, but it will produce some rational methods for dealing with them."

Respondent contends that his May 6, 1977 order was justified in ordering relator to allow employees to return to work and be issued contracts or (in the case of non-certified employees) be otherwise renewed for the 1977–1978 school year, etc., and that relator not terminate the employment of any teacher or other employment because of strike activities, because it preserved the status quo pending a trial on the merits. What the order does, in effect, is to require relator to issue contracts for the ensuing year and not to take "reprisal" action against teachers or other employees for participating in the illegal strike far beyond that required pending a determination of the issues in the action seeking a permanent injunction. Respondent attempted to go beyond that which would prevent defeat or impairment of his jurisdiction pending determination of the petition seeking a permanent injunction. In *United States v. Moore*, 427 F.2d 1020 (C.A.10th, 1970), the order appealed from enjoined F.A.A. from taking any administrative action against illegally striking defendants for their participation in a work slowdown. At page 1023, the court said, "However, upon the conclusion of the initial lawsuit in the district court, the F.A.A. will be free to impose against the defendants whatever sanctions are authorized by the applicable administra-

tive regulations." In this quote, the *Moore* case may be distinguished because relator here will be prevented from imposing whatever sanctions may exist under Chapter 168, RSMo 1969, by reason of restoration of employment and issuance of new contracts. So also with the cited cases, *Brotherhood of L. E. v. Missouri-Kansas-T. R. Co.*, 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960); and *United States v. Plasch*, 75 LRRM 2231 (C.A.7th, 1970).

The preliminary rule issued herein was based upon the allegations of the petition for writ of prohibition. Upon development of the issues by the parties upon full briefing and argument, it appears that the preliminary rule was in some aspects too broad, and in others, too narrow. It permitted respondent's order of May 6, 1977, to stand in its requirement that relator allow its employees to return to work without loss of accumulated seniority or district service, which was too broad. It required relator through a discussion team to comply with respondent's order to meet, confer and discuss in good faith with the Union at reasonable times and places in an effort to resolve the issues between the parties (Paragraph 7 of respondent's order) which was too narrow. The preliminary rule therefore also interfered with relator's statutory prerogatives above discussed. Consequently, respondent is absolutely prohibited from enforcing in its entirety his May 6, 1977, amendment to the temporary injunction. Of course, respondent's temporary injunction of April 13, 1977, still stands.

All concur.