Edward WILLIS, Respondent,

v.

The SCHOOL DISTRICT OF KANSAS CITY, Missouri, Appellant.

No. WD 30972.

Missouri Court of Appeals, Western District.

Aug. 4, 1980.

Modified On Court's Own Motion.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1980.

Mildred L. Watson of North, Colbert & Fields, Kansas City, for appellant.

Jerome F. Waterman & Robert F. Wiegert of Houlehan & Waterman, Kansas City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is an appeal from ·a circuit court judgment which reversed a school board order of termination of a tenured teacher. The judgment of the circuit court is reversed and remanded with directions.

■ Review of this matter is of the record, findings and order of the Board of Directors of the Kansas City School District and not of the circuit court, see *Ingram v. Civil Service Commission*, 584 S.W.2d 633 (Mo.App.1979). Neither the circuit court nor this court may substitute its judgment for that of the administrative agency and review is limited to the determination of whether or not the findings and order of the administrative agency were authorized by law and whether or not there was competent and substantial evidence to support such findings and order.

Although appellant (hereinafter referred to as the Board) presents several alleged errors, the disposition of this appeal turns upon the Board's challenge that the circuit court erred in ruling that the Board misapplied the law in concluding that respondent's absence for engaging in illegal acts violated Board policy on absence and thus constituted a statutory ground for termination for excessive and unreasonable absence. The remaining points raised by appellant are neither reached nor decided by this opinion.

Before addressing the evidence on record and the determination of the competency and substantiality of such evidence, determination of the lawfulness of the Board's action must be considered.

The appellant Board derives its existence and authority from the statutory laws of our state. The legislature, in Chapters 160 through 179, RSMo 1978, expressly provides for the public school system for our state and these statutory sections implement Articles IV and IX of our state constitution.

The pertinent statutory authority to the instant case is to be found within § 168.114, RSMo 1978.

The procedural aspects of termination are to be found within §§ 168.116 and 168.118, RSMo 1978. It should also be noted that appellate proceedings shall be in conformity with Chapter 536, RSMo 1978. Authority is granted school districts to promulgate rules and regulations which further implement the foregoing constitutional and statutory

authorization, see §§ 171.011 and 162.621(1), RSMo 1978.

In this case, the Board was clearly authorized by statute to initiate the instant proceedings, and the matter actually becomes one of determining whether or not there was competent and substantial evidence to support the findings and order of the Board.

Recital of the pertinent facts now becomes necessary. Edward Willis, respondent and hereinafter referred to as teacher, acquired permanent teacher status under the Teacher Tenure Act at the beginning of the 1975–76 school year. The Teacher Tenure Act was effective July 1, 1970, see § 168.102.

Prior to March 20, 1977, a written contract existed between the board and teacher. This contract covered the period from August 30, 1976 through June 30, 1977, and under existing law, was continual in nature. On March 21, 1977, teacher and many of his fellow workers engaged in an illegal strike against the Kansas City School District. The strike and its illegality are not disputed on this record. That the strike action is prohibited and hence illegal under Missouri law, see § 105.530, RSMo 1978. That teachers are prohibited from forming and joining labor organizations, see § 105.510, RSMo 1978. That teacher voluntarily participated and engaged in the strike which commenced March 21, 1977 is also not in dispute in these proceedings. The evidence in this case also reveals that teacher engaged in similar illegal strike activities against the Kansas City School District in 1974.

The Kansas City School District, through the Board, notified teacher and his fellow employees to return to work. Teacher chose to ignore the return–to–work directive and joined the picket line in front of Central Junior High School. On March 21, 1977, teacher, in addition to being on the picket line, was observed by a Kansas City Missouri Police officer puncturing the tire of an automobile owned by a nonstriking teacher. Teacher was immediately arrested. When taken into custody, he was found to have in his possession, concealed on his person, two ice picks and a Phillips–type screwdriver. The charges lodged against him were that of carrying a concealed weapon and malicious destruction of property.

Teacher's arrest culminated in a conviction for carrying a concealed weapon in violation of Chapter 26 of the Revised Ordinances of Kansas City, Missouri. The charge of malicious destruction of property was dismissed upon restitution for damages to the tire, along with service charges paid by teacher.

Following his arrest, but prior to his conviction, teacher returned to the picket line. He was involved in verbal confrontation with nonstriking teachers, as they would cross the picket line and enter the school premises. One such incident resulted in a school official having to restrain a nonstriking teacher from attacking teacher, because teacher taunted this nonstriking teacher for not honoring the strike.

During the strike, the Board made a continued demand that all school personnel engaged in the strike return to work. This demand included teacher. His refusal to respond to the Board's demand resulted in his absence from his employment from March 21, 1977 to, but not including, April 12, 1977.

Teacher returned to work after he and others were found in contempt of court by the circuit court, 16th judicial circuit, fined $400 and ordered to either return to work or serve 30 days in jail. Teacher elected to return to work rather than serve a jail sentence following this order.

Teacher's conduct relative to the malicious destruction of property and the carrying of a concealed weapon received coverage in newspapers, on the radio and on television networks. His conduct was observed by district administrators, fellow teachers, students and the general public.

Teacher later admitted his acts were illegal and wrong. He acknowledged his contract with the Board was subject to state law and to Board policies. The Board notified teacher, by a certified letter dated May

3, 1977, of his termination, pursuant to § 168.116, RSMo 1978. One reason for termination as applicable to disposition of the matter on appeal was:

"3. Excessive and unreasonable absence from performance of duties: Your absence for the purpose of striking violated BP6452 to 6462 of the 1976–1977 Teacher Handbook, particularly BP6460 (2), as absence for an illegal act is prohibited by these policies." (Taken from letter of May 3, 1977 from Board to teacher, notifying him of his termination)

Teacher, as his right, then requested a hearing before the Board. The hearing was closed to the public at and upon the request of teacher. This hearing revealed no real dispute as to teacher's participation in the illegal strike activities, in carrying a concealed weapon and in the destruction of property. The Board offered evidence, both oral and documentary, alleging such acts of teacher not only violated state law and city ordinances, but school policies and regulations. The Board contended teacher's acts violated specific sections of such published regulations, which follow *infra*.

The Board's evidence included the testimony of the owner of the motor vehicle which was damaged, the arresting police officer, a keeper of personnel records to show teacher's absence, administrators who testified as to teacher's activities at the time of the strike and those persons who testified about teacher's job assignment, etc., subsequent to teacher's return to work.

Teacher countered with witness evidence regarding his proficiency as a mathematics teacher, his attitude as a strong class disciplinarian, his extra–curricular activities on behalf of the school, his working relationship with co–workers and his general character. Teacher admitted his actions and conduct were wrong, but described them as "mischief" and as a "stupid act". He stated he wished to apologize to his family, his principals, the superintendent, his students and the Board.

Teacher, by ignoring the demand by the Board to return to work, was absent twelve days. Evidence was submitted that during those twelve days, students were present only one day. This was because the strike was in progress.

The evidence closed and the Board, by vote, concluded the evidence supported the termination of teacher from his employment. Teacher filed a petition for review, upon which the circuit court reversed the findings and order of the Board, ordered that teacher be reinstated as a tenured teacher and upon remand, that the Board determine teacher's damages.

This appeal followed.

The circuit court, in overturning the Board's order, concluded that the incompetency and inefficiency of a teacher must be proven in addition to specific grounds for termination. The Board contends such finding to be erroneous and refers this court to § 168.114 1 (3), which alludes specifically to inefficiency, incompetency and insubordination. The particular part of this statute reads:

"1. An indefinite contract with a permanent teacher shall not be terminated by the board of education of a school district except for one or more of the following causes: * * *

(3) Incompetency, inefficiency or insubordination in line of duty; * * * "

The record reveals that teacher was not charged under § 168.114 1 (3), therefore the question arises as to whether or not incompetency and inefficiency are inherent within the charges made against teacher.

The question imposes upon this court a duty to analyze § 168.114, RSMo 1978 to consider judicial construction of that section and in turn to determine whether the conclusion reached by the Board was accurate.

Unlike tenure statutes from other states which predicate termination upon good cause or similar premise, and leave determination of that issue to boards and the courts, our legislature has specifically defined the conditions upon which termination of a teacher can be carried out. § 168.114 1 (3) provides for termination if incompetency, inefficiency or insubordination by a teacher can be proven as a sepa-

rate and specific premise for termination. A reading of this particular statute alone leads to the conclusion that incompetency and inefficiency have been specifically set forth as grounds for termination under subsection (3) of section 1 of § 168.114, and a reading of the remainder of this statute provides no direct or inferential reference to competency or inefficiency within the remaining expressed causes for termination. Thus, the sheer reading of the statute leads to a contrary finding than that made by the circuit court. Does it follow then that by construction, the requisites of incompetency and inefficiency are contained within the remainder of § 168.114?

Contending that such a requisite is not contained within the remainder of the statute, the Board directs this court's attention to the case of *Harrisburg R VIII School District v. O'Brian*, 540 S.W.2d 945 (Mo. App.1976). That case involved the termination of a tenured teacher for her refusal to teach a special education class, and as a result of such refusal, her action was tantamount to unreasonable absence from performing her duties. The case is noteworthy, for after dispensing with the alleged constitutional issues of due process and equal protection, the court addressed the specificity of § 168.114. The court clearly pointed out at 952,

"Sub–paragraphs (1), (2), (3), (4), (5), and (6) of paragraph 1 of Section 168.114, supra, list the 'causes' for which the 'indefinite contract' of a 'permanent teacher' may be terminated by a board of education of a school district . . . O'Brian was not charged with 'professional' incompetency or inefficiency. She was charged with 'unreasonable absence from performance of duties', sub paragraph (5) . . . Her professional 'competency' or 'efficiency' were not in issue and bore no relationship whatsoever to the charge leveled against her."

■ By the nature of the wording expressed within § 168.114 and the interpretation attributed thereto by *Harrisburg R VIII School District v. O'Brian, supra*, the conclusion must be that the circuit court simply, but incorrectly, attributed the requirement that proof of incompetency or inefficiency must be shown in order to sustain a termination premised upon a specific charge set forth under the statute other than § 168.114 1 (3). Section 168.114 (excepting § 168.114 1 [3]), neither within its very wording, nor interpretation thereof requires such.

Research of teacher tenure acts of our sister states reveals, as has been mentioned, that removal for "good cause" is structured within the statutory language. As contrasted with our own act, the legislature of Missouri has set forth an unequivocal and precise basis upon which termination shall or may occur.

The legislative history giving rise to the Missouri Teacher Tenure Act was to prevent arbitrary dismissal of a certificated teacher by school districts and boards subsequent to the passage of a minimum probationary teaching period. Contained within the four corners of the act itself are prescribed specific and thus limited bases upon which the continual contract of tenured teachers can be terminated. There is to be found no contingent language interceding between the specific bases of termination. To state it another way, the statute does not say that a tenured teacher may be terminated upon one or more of the specific statutory reasons only if such reason or reasons rendered the teacher incompetent, inefficient or unfit to teach.

Turning now to the alleged error which is dispositive of this appeal, appellant charges the circuit court erred in holding that appellant Board misapplied the law in concluding respondent's absence, as a result of respondent's engaging in illegal acts, constituted statutory grounds for terminating respondent for excessive and unreasonable absences.

The undisputed evidence reveals teacher was absent as a direct result of his participation in illegal strike activities from March 21, 1977 to April 12, 1977. Pertaining to this issue are § 168.114 1 (5), RSMo 1978 and Board Policy 6460(2), which read as follows:

"168.114. Board may terminate, grounds for

1. An indefinite contract with a permanent teacher shall not be terminated by the board of education of a school district except for one or more of the following causes: * * *

(5) Excessive or unreasonable absence from performance of duties; or * * "

*"6460 PERSONAL BUSINESS ALLOWANCE PROCEDURES*

A maximum of two days may be used in a given contract year' for 'personal business.' Such 'personal business' allowance is not authorized for the following: * *

2. Participation in illegal acts * * * "

The conclusion, based upon the undisputed evidence, is inescapable that teacher's unauthorized absence was the direct result of his participation in illegal acts, to wit, the illegal strike and the puncturing of the tires.

The circuit court construed such policy to be merely an advisement to the teacher that he or she will be paid for time off for certain reasons and that for other time off and for other reasons, no compensation will be paid. Such conclusion by the circuit court, in light of the evidence of the instant case, must be held to be in error.

■ The law in our state is quite clear that where statutory authority exists which empowers a school board to establish a policy on teacher absence, there is no requirement that the board adopt and publish regulations with respect to such policy, see *Aubuchon v. Gasconade County R-1 School District*, 541 S.W.2d 322 (Mo.App.1976) and § 168.114 1 (5). Teachers' unauthorized absences have been addressed by our courts before, see *Aubuchon v. Gasconade County R-1 School District, supra*, where the termination of a permanent teacher was upheld when teacher, who claimed she was too ill to teach, in reality spent 5 days in Las Vegas attending convention business with her husband. The case is noteworthy when looking at the instant case because in addition to declaring it unnecessary for a school

district to declare and publish rules of unreasonable or excessive absence, the court pointed out correctly that the statute (§ 168.114) is self-executing. That particular decision has additional significance when looking at the instant case because under the attending circumstances, 5 days unauthorized absence was held to be unreasonable. In the instant case, teacher absented himself for 12 days, the cause of which was his participation in an illegal strike, verbal and near physical confrontation with teachers attempting to work and obeying the law, and involvement in carrying concealed weapons and the destruction of personal property.

Further, it has been held whether the reasons for absence are authorized or not is within the discretion of the school board, see *Smith v. Consolidated School District No. 2*, 408 S.W.2d 50 (Mo.banc 1966) and such discretion will not be interfered with unless an abuse of that discretion occurs.

■ The court's scope of review is limited and substitution of the court's judgment for that of the agency under review is prohibited under § 536.150 5, see *Board of Education, Mt. Vernon Schools, Mt. Vernon v. Shank*, 542 S.W.2d 779 (Mo.banc 1976), *Blunt v. Parker*, 495 S.W.2d 708 (Mo.App. 1973); *Harrod v. Board of Education, City of St. Louis*, 500 S.W.2d 1 (Mo.App.1973). It has been further declared that where evidence before an administrative body would warrant either of two opposing findings, the court, upon review, is bound by the administrative determination, and it is irrelevant that the evidence is supportive of the contrary finding, see *Hanebrink v. Parker*, 506 S.W.2d 455 (Mo.App.1974). See § 162.471, 168.102, 171.011, et seq., RSMo 1978 for further authority that the Board is vested with discretion in teacher termination proceedings. See also *School District of Kansas City v. Clymer*, 554 S.W.2d 483 (Mo.App.1977).

As a final note, it has been held that one occurrence or incident can constitute proof of more than one charge regarding teacher termination and that it is the role of the

court to determine upon review of the whole record that the evidence is competent and substantial that a board could have reasonably made its findings and reached the conclusions it did reach, see *Rafael v. Meramac Valley R–III Board of Education*, 569 S.W.2d 309 (Mo.App.1978).

■ The evidence upon this record clearly supports the Board's findings that teacher's acts were illegal, that such acts violated board policy and that termination upon the ground of excessive and unreasonable absence was supported thereby. The conclusion reached by the trial court to the contrary was erroneous and pursuant to § 168.-114 1 (5), *Aubuchon v. Gasconade County R–1 School District, Smith v. Consolidated School District No. 2* and *Rafael v. Meramec Valley R–III Board of Education, supra*. The position of the Board is sustained relative to its findings of termination upon excessive and unreasonable absence from the performance of duties.

■ Prior to stating a final conclusion, two additional matters raised by respondent teacher must be addressed. Teacher complains of the Board's failure to include its findings of fact and conclusions of law with its resolution of termination forwarded to teacher. Attending to the same issue is a further complaint that when filed with the court, the findings and conclusion were signed by the Secretary for the Board, not a Board member. As will become apparent, neither contention bears any merit.

Teacher filed his petition for review on July 26, 1977. The circuit court was advised by the Board that findings and conclusions were not prepared until August 4th or 5th, 1977. The findings and conclusions, along with the proper responsive pleadings, were filed by the Board on August 25, 1977. On February 25, 1978, teacher filed an amended petition for review. This amended petition was some six months after the findings and conclusions had been filed with the circuit court. It is upon the amended petition and response thereto that this appeal is conducted.

The Board filed 31 findings of fact and 11 conclusions of law. Teacher was made fully aware of those findings and conclusions, permitted to amend his pleadings, and thus cannot now be heard to complain that he was in any manner prejudiced.

The circuit court acknowledged the challenge over the filing of findings and conclusions and elected to accept the findings and conclusions as those of the Board. The circuit court noted it could have remanded the case pursuant to *Stewart v. Board of Education of Ritenour Consolidated School District*, 538 S.W.2d 765 (Mo.App.1976). The instant case is clearly distinguishable from the *Stewart* case, for in the *Stewart* case, no findings or conclusions were ever filed and a remand was therefore necessary. Appellant further argues this instant case is controlled by *Stephen and Stephen v. State Tax Commission*, 499 S.W.2d 798 (Mo.1973). The *Stephen* case is likewise distinguishable, for in that case the circuit court endeavored to enter judgment following quashal of the findings and conclusions.

■ In the instant case, the circuit court elected to accept the findings and conclusions. Such an approach is discretionary, particularly when an amended petition is filed. The courts have spoken to this point before in the cases of *Missouri United Methodist Retirement Homes v. State Tax Commission*, 522 S.W.2d 745 (Mo.1975), which declared that an amended petition for review filed subsequent to late filings of findings of facts and conclusions of law is presumed to meet any new issue raised by the findings and conclusions; and *Brown v. Alberda*, 579 S.W.2d 718 (Mo.App.1979), which declares that while findings of fact and conclusions of law should be prepared at the time of administrative decision and late filings were subject to a motion to strike, but where the circuit court considers the findings and conclusions under *Missouri United Methodist Retirement Homes, supra*, appellate courts have discretion to rule on the merits.

In the instant case, as with any case, the intent and purpose of findings and conclusions is to inform the opposing party and

the court of the factual and legal basis for an administrative decision. There are no facts in the record of this case which disprove this intent and purpose were not served, and absent such evidence, the administrative proceedings are presumed to be regular and proper in their nature, see *U. S. v. Rucker*, 435 F.2d 950 (8th Cir. 1971). The issue of the late filing of findings of facts and conclusions of law is disposed of by the decisions of *Missouri United Methodist Retirement Homes v. State Tax Commission* and *Brown v. Alberda, supra.*

■ Regarding the matter of the findings and conclusions being signed by the secretary rather than a Board member, teacher provides this court with no cited authority that such signature is invalid. The circuit court, in commenting upon the point, again alluded to *Stewart v. Board of Education of Ritenour Consolidated School District, supra,* and for the foregoing reasons, that case is to be distinguished upon its facts from the instant case.

As to the matter of signature, upon research by this court, it is found there is no requisite either within Chapter 536, RSMo 1978 or the Teacher Tenure Act which makes mandatory the signature of a Board member. The only reference found is the designation of duties pursuant to § 162.531, RSMo 1978 which directs the secretary of a school board to perform the duties assigned to him by the board. In any event, the record is clear that findings and conclusions were filed of record, acknowledged and accepted as filed by the circuit court inclusive of the signature of the secretary. By contrast, teacher has failed to show how and by what means such action resulted in any prejudice to him.

On a final matter, from the inception of teacher's requested hearing, he invoked a defense of estoppel. His position was predicated upon the following events, which teacher alleges estopped the Board from terminating his contract. The parties acknowledge that because teacher had acquired status as a tenured teacher, his contract was of a "continual nature" and subject to "modification" each year for such things as salary, recognition of improved educational status and job assignment. The evidence reveals teacher, pursuant to the conditions of a contempt order of the circuit court, returned to his school on April 12, 1977. The evidence further reveals teacher was assigned to another school and worked in the classroom until May 10, 1977.

On April 14, 1977, two days after teacher returned to the classroom under the contempt order, a modified contract was tendered to him by the Board. The evidence reveals teacher's modified contract was forwarded as a matter of administrative procedure, automatically along with such contracts to other teachers.

When this matter became an issue at the hearing, the evidence reveals that the chaos created by the illegal teachers strike throughout the district rendered normal administrative procedures impossible.

It is the contention of teacher that since the Board knew of his illegal and unauthorized conduct of March 21, 1977, if the Board intended to terminate teacher, a modified contract should not have been tendered. It is further contended that by the tender of the modified contract, the Board is now estopped from terminating teacher.

The doctrine of estoppel sounds in equity. Teacher was an active participant in the very events which led to his own termination and the general chaos and disruption of the community. Teacher now desires to assert the argument that the Board cannot proceed to terminate him. The tendering of the contract did not occur in a vacuum, rather, it occurred during a time when illegal actions were occurring on a wide scale within the school district, which led to disruption of the educational program and ultimately led to intervention by the court's directing teacher and others to obey the law. Teacher actively contributed to the problem and cannot now claim the protection of estoppel under any principle of equity.

The only other factor to be considered is whether or not the Board's action constituted a waiver of its claim to terminate teacher.

The facts of the instant case, which clearly show the chaos within the school district at the time (to which teacher was a direct contributor) coupled with the order of the circuit court in the contempt proceedings, clearly established there was no waiver by the Board.

On March 20, 1977, a temporary restraining order was issued against the teachers union, respondent and other teachers. This order was ignored by teacher and others. For violating the restraining order, respondent teacher was served with a contempt citation on April 6, 1977. On April 7, 1977, respondent appeared for the contempt proceedings and was ordered to return to work or serve thirty days in jail. On April 12, 1977, respondent returned to work and was assigned to a different high school. He worked at this second school until May 10, 1977, when upon such date, he was served with a notice of termination.

Even if the Board had knowledge of respondent teacher's conduct prior to the April 14, 1977 date (date of tender of modified contract), the chaos and disruption to which respondent teacher directly contributed prevented the Board from addressing other administrative matters including the prevention of the tender of the April 14, 1977 contract to respondent teacher.

In the case of *School District of Kansas City v. Clymer, supra,* the circuit court amended its restraining order on May 6, 1977, concluding termination could only attend to teachers or others found guilty of causing injury to persons or property.

█ The above—referred—to order and hence limitation upon termination of teachers provides further support to appellant's position opposing any waiver or the application of the doctrine of estoppel. As has been pointed out, the tender of the April 14, 1977 modified contract was done during a period of chaos and confusion to which respondent teacher contributed. The Board was administratively contending with getting the schools back on a normal operating schedule, meeting demands of critical employee shortages and contending with legal proceedings in court to invoke a return to the educational program of the district. These demands, as the evidence reveals, rendered it impossible for the Board to specifically and administratively address the individual contract status of respondent teacher. When those conditions were coupled with the absence of any directive (until the circuit court order of May 6, 1977) as to continued employment or termination of teachers, it cannot be said the Board waived any claim of right in discharging its administrative duties. The evidence reveals teacher was advised of his termination within four days of the circuit court order under date of May 6, 1977.

It should be noted that the circuit court order of May 6, 1977 was later enjoined by this court by writ of prohibition upon the premise that the circuit court amendment (May 6, 1977) to its original injunction exceeded its jurisdiction as an interference of the powers and discretion granted to the school district. The school district sought and obtained an injunction against striking teachers. The circuit court subsequently attempted to modify its own injunction by limiting termination of teachers to those teachers who had committed acts against other persons or property. On June 27, 1977, this court ruled such amendment (order of May 6, 1977) was prohibited. The case of *School District of Kansas City v. Clymer, supra,* is noted here only for the purpose of illustrating the chaos and confusion attending to the time the alleged contract was made to teacher. Not only does the evidence dispel teacher's argument of estoppel, but the *Clymer* case indicates the legal uncertainties prevailing at the same time.

Perhaps accurate assessment of the adversity, if any, sustained specifically by the Kansas City School District and by the community in general, resulting from the above--referred to events of 1977, will never be possible. The evidence upon the record of this case, however, makes it absolutely clear that respondent teacher was subject to the laws of this state and the policies of the school district and in turn he elected to violate those laws and policies. The fact

remains there was competent and substantial evidence to support the resolution of termination of respondent teacher for excessive or unreasonable absence from performance of duties and that before that conclusion was reached, teacher was accorded due process.

For the reasons set forth herein, the judgment of the circuit court is reversed and this cause is remanded to the circuit court with directions to affirm the order of the Board, provided further that the circuit court is directed to order the Board to ascertain what sum in the nature of compensation was due respondent teacher, if any, prior to the effective date of the original termination order of the Board and order said sum, if any, be paid to respondent.

All concur.