**Fred H. BROWN, Plaintiff-Appellant,**

v.

**Marjorie WEIR, et al.,
Defendant-Respondent.**

No. 45494.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 8, 1984.

C.R. Willis, St. Louis, for plaintiff-appellant.

Lashly, Caruthers, Baer & Hamel by Kenneth C. Broston and Amy Rehm Hinderer, St. Louis, for defendant-respondent.

SATZ, Judge.

Fred H. Brown (Brown), a tenured teacher in the City of St. Louis, was suspended by the Superintendent of Schools for the City (Superintendent). The Superintendent suspended Brown for alleged violations of the regulations of the City's Board of Education (Board). After a hearing before a committee of three members of the Board, the Board met and, based upon the transcript of the hearing, voted to dismiss Brown. The Board issued Findings of Fact, Conclusions of Law and its Decision to Dismiss Brown. This document was signed by the President of the Board. The Board found that Brown struck several students with a belt during a field trip to the Missouri Botanical Gardens, disregarded the directive of a superior not to hit the children with his belt, and lied to and withheld information from a superior by denying that he hit the children.

A petition captioned "Petition for Review of Administrative Decision and For Writ of Prohibition," signed by Brown and nine other people, was filed in the circuit court. The petition was in two counts. In Count I, Brown sought review of the Board's action under Chap. 536 RSMo 1978,[1] our Administrative Procedure Act, and prayed for reversal of his dismissal by the Board. In Count II, Brown, as relator, sought a writ of prohibition, prohibiting the Board from dismissing him. The trial court denied the request for the writ and, subsequently, affirmed the Board's dismissal of Brown. According to the Notice of Appeal, Brown alone appeals.[2] We affirm the judgment of the trial court.

Brown contends that the trial court erred: (1) by not determining whether the Board's "refusal" to provide him with a cost free transcript and its "refusal" to pay

---

1. All statutory references are to RSMo 1978, unless otherwise stated.

2. In the trial court's "Memorandum Opinion and Order," the court found that "Brown is the only Plaintiff who is an 'aggrieved' person" in the matter before the court.

him his salary during suspension violated his right to equal protection of the law, as guaranteed by the Missouri Constitution; (2) by determining the Board had the power to delegate the authority to the Superintendent to suspend teachers; (3) in denying his motion for the production of minutes of the Board meeting pertaining to his discharge; (4) by determining the Board's decision was regular on its face when signed by only one Board member; (5) by rejecting his request for the actual vote of each Board member; (6) by concluding the Board's decision was supported by competent evidence when the only supporting evidence consisted of the incompetent hearsay testimony of one person; and (7) by denying the request for a writ of prohibition.

Brown's argument that his constitutional right to equal protection of the law is neither clear nor explicit. To explain our understanding of this argument, we first review the statutes upon which the argument is based.

School districts in Missouri are classified into several different classes. Chap. 162. Missouri's Teacher Tenure Act, Chap. 168, defines, among other things, the process for terminating the employment of teachers within the districts covered by the Act. §§ 168.116 and 168.118 apply to teachers employed by school districts other than metropolitan school districts. § 168.118 requires that a tenured teacher be given cost free transcripts of termination proceedings against him or her, and § 168.116(4) requires a teacher be paid during a period of suspension, if the teacher is suspended prior to the completion of the termination proceedings.

In the instant case, the Board is the board of education of a metropolitan school district. § 162.571. Thus, the Board is not bound by the above-noted statutes governing teacher terminations; rather, it is bound by the termination process for metropolitan school districts set out in § 168.-221. This statute does not require a tenured teacher be provided a cost free transcript of termination proceedings nor does it require the teacher's salary be continued during his or her suspension. Thus, as to the salary during suspension and the transcript of a termination proceeding, the teachers employed by metropolitan school districts are statutorily treated differently than teachers employed in other school districts.

Apparently, Brown's salary was stopped at the time of his suspension, and he was not furnished a transcript of the hearing before the committee of the Board. Based upon these facts, Brown, in Count I of his petition, alleged that his "statutory and constitutional rights" were violated and prayed that the Board's decision be reversed.[3] The trial court affirmed the decision of the Board.

As we have noted, in his Points on Appeal, Brown complains this decision of the trial court was erroneous because the court failed to determine whether the Board's refusal to pay his salary during suspension and its refusal to provide him with a cost free transcript violated his right to equal protection of the law.[4] On reading Brown's argument in support of this Point, however, his real complaint is not that the trial court failed to make a decision at all, but, rather, the trial court erred in affirming the Board's decision on what Brown assumes to be improper procedural grounds, namely, Brown failed to raise these constitutional issues at the earliest possible time—prior to the hearing before the committee of the Board. We do not reach the merits of Brown's argument because he does not show his alleged rights

---

**3.** At best, Brown's petition is inartfully drawn. The issue of whether his allegations were specific enough to raise violations of his constitutional rights, however, was not before the trial court.

**4.** Brown's Point reads:
"THE TRIAL COURT ERRED BY REFUSING TO DETERMINE WHETHER RESPON-DENT'S REFUSAL TO PROVIDE APPELLANT WITH A COST FREE TRANSCRIPT OR PAY HIS SALARY DURING SUSPENSION VIOLATED APPELLANT'S RIGHT TO EQUAL PROTECTION OF THE LAW, WHEN SUCH ISSUE, EVEN IF SUBSTANTIVE, COULD NOT HAVE BEEN RAISED BEFORE APPEAL."

were, in fact, violated and, thus, does not show he was harmed.

■ As to the lack of pay during his period of suspension, Brown presented no evidence nor made any offer of proof that he requested the Board to continue his salary during his suspension and that his request was denied.[5] Thus, Brown failed to preserve this issue for the trial court and for appeal. *See, e.g., Bryant v. Bryant,* 590 S.W.2d 352, 353 (Mo.App. 1979).

■ Moreover, even if Brown had properly preserved this issue for review, his appropriate relief would be payment of his salary during the period of suspension, not the reversal of his dismissal as prayed for in Count I. The trial court has no power to grant relief not properly sought. *See, e.g., Richards v. Earls,* 345 Mo. 260, 133 S.W.2d 381 (1939).

■ A similar analysis applies to the issue of the Board's failure to provide him with a cost free transcript of the dismissal proceeding. Again, there is nothing in the record to show Brown requested this transcript from the Board, after the hearing and before review by the trial court, and that the Board denied his request.[6] Thus, again Brown did not properly preserve this issue for appeal. *See, e.g., Bryant v. Bryant, supra* at 353.[7] Accordingly, we do not address the constitutional issue Brown attempted to raise by this Point and Argument.

■ Brown next contends the Superintendent had no authority to suspend him and the Board had no power to delegate such authority to the Superintendent. We disagree.

Subject to statutory guidelines and due process considerations, boards of education throughout our State have been granted broad powers and discretion in the management of school affairs, including termination of employment. *School District of Kansas City v. Clymer,* 554 S.W.2d 483, 487 (Mo.App.1977). § 162.621 expressly gives boards of education of metropolitan school districts rulemaking authority in such areas as management of schools and employment of teachers.[8] Under this authority, the Board promulgated its Rule 1205, which provides:

"The Superintendent shall have the authority to suspend without salary any certified employee pending a hearing of formal charges before the Board."

Since the Superintendent is the one who recommends teachers and reviews their progress, § 168.211.1, he is better suited than a distant board to recommend suspension of those same teachers. Moreover, any action taken with regard to the employment or termination of teachers is not final and must be acted upon by the Board. § 168.211.1 and Rule 1205 *supra.* We, therefore, find nothing unreasonable or arbitrary in the Board's granting to the Superintendent the authority to suspend teachers subject to the Board's approval and ratification. It would not be sensible to limit the Board's delegation of this power and, under the statutory scheme and the Board's rulemaking authority, this limitation is not necessary to protect the tenured rights of teachers.

■ Brown next contends the decision issued by the Board is irregular on its face

---

5. In its answer to Count II of the petition, the Board did admit that Brown had not been paid during his suspension.

6. In its answer to Count II of the petition, the Board did admit that a cost free transcript was not made "available" to Brown.

7. "The court may ... hear and consider evidence of alleged irregularities in procedure or of unfairness by the agency, not shown in the record." § 536.140.4; *see also Stewart v. Board of Education,* 574 S.W.2d 471, 473 (Mo.App. 1978).

8. Section 162.621, RSMo 1978 provides:
"The board of education may:
(1) Make, amend and repeal rules and by-laws for its meetings and proceedings, for the government, regulation and management of the public schools and school property in the city, for the transaction of its business, and the examination, qualification and employment of teachers, which rules and bylaws are binding on the board of education and all parties dealing with it until formally repealed;
...."

because it was signed by only one member of the Board. § 168.221 requires a majority decision by the Board before a tenured teacher may be dismissed,[9] but no statute requires that all members of the Board or even those voting in favor of dismissal sign the decision. No evidence was presented that the document in issue was not written at the direction of the Board; in fact, the President of the Board who signed the document testified that it was the decision of the Board. When faced with a similar problem, our colleagues in the Western District indicated the signature by the secretary of a board of education affixed to the board's decision created no facial irregularity, sensibly implying the execution was simply ministerial. *Willis v. School District of Kansas City*, 606 S.W.2d 189, 196 (Mo.App.1980). We agree with the teaching of the *Willis* case and, thus, disagree with Brown.

■ Brown also argues the trial court improperly denied his motion to produce the minutes of the Board meeting pertaining to his dismissal. The court based its denial on § 610.025.4 of our Sunshine Law, which provides that:

"proceedings involving ... hiring, firing or promotion of personnel of a public governmental body may be a closed meeting, closed record, or closed vote."

A "closed meeting" is self-explanatory: "any meeting closed to the public." § 610.-010(1). This is simply legislative recognition that confidentiality is essential to the proper conduct of certain operations of public bodies. *See generally, Hyde v. City of Columbia*, 637 S.W.2d 251, 258–263 (Mo. App.1982), *cert. denied*, 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983). If the Board meeting on Brown's dismissal was to be a "closed meeting," obviously, the minutes of that meeting could not be disclosed.

Brown contends, however, that because he chose to open the hearing held by the committee of three members of the Board, the subsequent Board meeting and the vote should also have been open. We disagree. The decision whether to close the meeting and vote belongs to the Board. *See Wilson v. McNeal*, 575 S.W.2d 802, 810 (Mo.App. 1978). Not only is protection of the employee's privacy and reputation involved, but there also exists a proper concern for promoting free and open discussion among members of the Board. *Hudson v. School District*, 578 S.W.2d 301, 308 (Mo.App. 1979). § 610.025 does not empower a person affected by discussions held in a closed meeting to open that meeting. *See Wilson v. McNeal, supra* at 811.

■ Brown next contends the trial court erred by refusing to permit him to ask how each member of the Board voted on his dismissal. A valid dismissal requires a majority vote of the Board. § 168.221.3. At the hearing before the trial court, Brown showed that eleven members of the Board initially attended the meeting to discuss his dismissal and, then, by an offer of proof, attempted to show that four of these members left before the vote was taken. With this foundation, Brown contends he should have been permitted to ask how each of the remaining seven members voted, in order to determine whether a majority of the Board did, in fact, vote for his dismissal.

The actual vote on Brown's dismissal may be by "closed vote." § 610.025.4. This permits the members of the Board to cast their vote free from extraneous and irrelevant pressures. Brown would have this secret vote disclosed. If his request were followed, the closed vote would no longer be secret, and the knowledge of this subsequent disclosure could create the pressure the secret vote was to avoid.

9. The statute reads:
"No teacher or principal whose appointment has become permanent may be removed except for one or more of the following causes: Immorality, inefficiency in line of duty, violation of the published regulations of the school district, violation of the laws of Missouri governing the public schools of the state, or phys-

ical or mental condition which incapacitates him for instructing or associating with children, *and then only by a vote of not less than a majority of all the members of the board, upon* written charges presented by the superintendent of schools, ...." (Emphasis added).

Although not made by Brown, forceful argument can be made that the Board vote is comparable to a jury vote, and a jury vote, cast in secrecy, subsequently may be disclosed, upon request for a jury poll. This court, however, has opted for the complete protection of the actual votes of the members of an administrative board. In *Wilson v. McNeal,* this court refused to require the Board of Police Commissioners to disclose its records of the investigation of the death of a party in police custody, although the investigation was made in contemplation of possible disciplinary action which could have resulted in firing of personnel. As to the actual vote of that Board, this court unequivocally stated:

> "As the law is written ... the exemption from disclosure for closed meetings ... relating to the hiring, firing or promotion of personnel of public governmental bodies continues after final action is taken....
>
> ....
>
> ... [If the records of the personnel meeting were disclosed], [n]o purpose could be served in closing the meeting initially.
>
> A more unreasonable result would occur if a closed vote, once taken, were to be subject to immediate disclosure. The closed vote provision in the statute means nothing if the only time the vote would be closed would be during the actual vote taking. The legislature is presumed to intend a logical and reasonable result .... There is also a presumption that the legislature did not intend unreasonable consequences." *Wilson v. McNeal, supra* at 811.

Brown next contends the Board's decision was not supported by competent and substantial evidence because it was based solely upon hearsay evidence. We disagree.

■ Admittedly, only one person testified about Brown actually striking several children. This witness, however, was an eyewitness who testified she saw Brown strike the children. Other eyewitnesses testified they observed Brown wielding a belt but were unable to see the belt actually strike the children. This testimony is not hearsay. In the present context, hearsay testimony would be these witnesses testifying to what someone else told them they saw Brown do. *See* McCormick, *Evidence,* § 246 (2d ed. 1972).[10]

The principal reason for excluding hearsay evidence is that the declarant is not available at trial for cross-examination, precluding any opportunity to test the declarant's credibility. *See, e.g., Dryden v. Aitken,* 405 S.W.2d 925, 928 (Mo.1966). Here, not only were the witnesses testifying from first hand observation and knowledge, they were also available for and were, in fact, cross-examined by Brown. Consequently, Brown's argument that the eyewitness testimony constituted incompetent hearsay is without merit.

■ Brown's additional argument that this same testimony is not the best evidence is also without merit, for the "best evidence" rule deals with the production of an original writing, not oral testimony. *See* McCormick, *Evidence,* § 229 (2d ed. 1972).

■ We have read the record, and, contrary to Brown's complaint, the Board's order of dismissal was supported by competent and substantial evidence. *See, e.g., Willis v. School District of Kansas City,* 606 S.W.2d 189 (Mo.App.1980).

■ Finally, Brown contends the trial court erred in denying his petition for a writ of prohibition. He was entitled to a writ as a procedural vehicle for judicial review of his dismissal by the Board, he argues, because the statutory process defining the procedure for dismissal does not expressly provide for any method of judicial review of the Board's decision. This argument is misdirected and, thus, misses the mark.

Our state constitution creates the right to seek judicial review of agency decisions

---

**10.** "Hearsay evidence is testimony in court, ..., of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." *Id.* at § 246.

"which are judicial or quasi-judicial and affect private rights." Art. V, § 22 Mo. Const. 1945. Our legislature defines the procedure for processing this review, *see, e.g., Lafayette Fed.Sav. & L. Ass'n v. Koontz,* 516 S.W.2d 502, 504 (Mo.App. 1974), and it designed the Administrative Procedure Act, Chap. 536, to provide judicial review of a decision of an agency in a contested case, where no other specific statutes define the review process for a particular agency. *See, e.g., Greater Kansas City Baptist & Community Hosp. Assoc. v. Division of Employment Security,* 583 S.W.2d 247, 249 (Mo.App.1979). In Chap. 536, the terms "decision", "agency" and "contested case" are statutorily defined, § 536.010 RSMo 1978, and the Board's order of dismissal here was a "decision" of an "agency" in a "contested case." *See, e.g., Moore v. Damos,* 489 S.W.2d 465, 468 (Mo.App.1972); *Morrell v. Harris,* 418 S.W.2d 20, 22–23 (Mo.1967). Thus, Brown was provided with adequate judicial review of the Board's decision and his petition for a writ of prohibition was properly denied.

Judgment affirmed.

SIMON, P.J., and REINHARD, J., concur.