R. Jeffrey BONER, Plaintiff–Appellant,

v.

EMINENCE R–1 SCHOOL DISTRICT; Merle Phillips; Bill Spurgin; Larry Wood; Mark Miley; Ronnie Huffman; Jerry Chilton; Frank Hughes; Eric Mansfield; Shannon Ennis, Defendants–Appellees.

No. 94–3009.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1995.

Decided May 24, 1995.

Douglas T. Sloan, Cape Girardeau, MO, argued (Diane C. Howard, on the brief), for appellant.

Thomas A. Mickes, St. Louis, MO, argued (Celynda L. Brasher, on the brief), for appellee.

Before BOWMAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

JOHN R. GIBSON, Senior Circuit Judge.

R. Jeffrey Boner appeals the district court's[1] entry of summary judgment disposing of his claims against the Eminence R–1 School District and District officials.[2] Boner claims that the District placed him on involuntary leave without proper authority and in violation of his due process, statutory, and contract rights. We affirm.

In November 1992, the Missouri Department of Elementary and Secondary Education issued a School Improvement Review, analyzing a number of areas in which the District needed improvement. Based on this review, the Department provisionally accredited the District, requiring the District to develop, submit, and implement an acceptable School Improvement Plan addressing the problems or lose its accreditation and be merged with another district. *See* Mo.Rev. Stat. § 162.081 (1994). Some of the areas which the Department wanted the District to address were: adding high school courses in English, foreign language, and science; fully staffing the libraries; decreasing the counselor-to-student ratio in the elementary school; decreasing the high school's principal-to-student ratio; adding a junior high elective course; hiring additional staff to reduce two elementary class sizes; hiring only properly certified teachers; developing, implementing, and assessing curriculum; providing disabled access to the building; establishing a health care facility in each building; and improving attendance. The report also stated that "[t]he financial condition of the district is a concern as funding is not available to adequately compensate the staff or to support some programs at the desired level."

On April 12, 1993, in response to the report, the District's Board of Education voted to reduce the number of administrative positions from three to two, reduce the number of physical education classes, and consolidate elementary and secondary physical education and driver's education into a single position. Accordingly, the Board voted to place Boner, a tenured physical education teacher, and another physical education teacher on involuntary leave of absence as neither qualified for the consolidated position.[3] During that meeting, the Board also discussed Boner's coaching ability, use of obscenities at games, and lack of community support.

The Board notified Boner in a letter that his leave was based on "a reduction in staff and ... a subsequent change in job description, for which [he] was unqualified." Boner responded, requesting a written description of the manner in which the Board reached its decision. In a second letter, Boner requested a written statement of the information which the Board used to reach its decision and asked to respond before the Board. Mansfield, a school administrator, informed Boner that the Board would discuss his request for information at its May meeting, which Boner could attend. Boner was placed on the agenda for the May meeting, but did not appear at that or any subsequent Board meeting. He claims that his appearance at the meeting would have been futile, as he did not have the information he requested from the Board. Boner did not request another opportunity to respond before the Board. After the May meeting, the Board sent Boner a letter explaining that "changes in job descriptions require a teacher with certification in Physical Education K–12 and Driver's Education," and informing Boner that, because he was not certified in these areas, his

---

1. The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

2. For brevity's sake, we refer to all appellees as "the District."

3. Boner was certified to teach physical education in grades 7 through 12 and social studies.

"leave" would begin at the end of the school year.

Boner sued, claiming that the District placed him on involuntary leave in violation of due process, U.S. Const. amend. XIV, 42 U.S.C. § 1983 (1988); the Missouri Teacher Tenure Act, Mo.Rev.Stat. §§ 168.102–168.130 (1994); and his contract with the District. The district court granted summary judgment in favor of the District on all counts. Boner appeals, arguing that: (1) the District unlawfully placed him on leave; and (2) the District violated due process.

 We review the district court's grant of summary judgment de novo, viewing all evidence in the light most favorable to Boner. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). We also review de novo the district court's determination of state law, giving it no deference. *Salve Regina College v. Russell,* 499 U.S. 225, 238, 111 S.Ct. 1217, 1224–25, 113 L.Ed.2d 190 (1991). However, "[w]e are bound to apply state law as we are able to discern it from the rulings of the state's courts." *Jackson v. Anchor Packing Co.,* 994 F.2d 1295, 1310 (8th Cir.1993) (diversity case); *United States v. City of St. Louis,* 597 F.2d 121, 124 (8th Cir.1979) (federal question case).

 Boner contends that the Board did not base its decision to place him on involuntary leave on the statutorily permissible bases of decrease in enrollment, reorganization, or financial condition.[4] The district court held as a matter of law that the consolidation of teaching duties which eliminated Boner's position resulted from reorganization of the District, compelled in part by the District's financial condition. *Boner v. Eminence R–1*

*Sch. Dist.,* No. 1:93CV162–DJS, slip op. at 7–8 (E.D.Mo. July 25, 1994).

The Teacher Tenure Act does not define "reorganization" of a school district. Boner argues that we should define "reorganization" within the meaning of the Act by reference to the Missouri statutes governing geographical reorganization of school districts. *See* Mo.Rev.Stat. §§ 162.152, 162.171, 162.181 (1994). We need not decide whether the Board's actions were a "reorganization" because the record shows that the District's financial condition required the actions, and we may affirm solely on this alternative statutory basis.

The Board "may place on leave of absence as many teachers as may be necessary because of ... the financial condition of the school district." Mo.Rev.Stat. § 168.124. The statute does not define "financial condition" or identify the arbiter of necessity. Missouri case law on the issue is scant. However, an opinion of the Missouri Attorney General, issued shortly after the enactment of the Teacher Tenure Act, states that whether a school district's financial resources have been exhausted "is a decision which has been entrusted by the Missouri Constitution and statutes to the reasonable discretion of the school board of a district." Op.Mo. Att'y Gen. No. 501, p. 8 (Sept. 29, 1970). *See Frimel v. Humphrey,* 555 S.W.2d 350, 353 (Mo.Ct.App.1977) (holding that a school board may place teachers on leave if the school board "finds such action 'necessary' "); *School Dist. of Kansas City v. Clymer,* 554 S.W.2d 483, 487 (Mo.Ct.App.1977) (stating that the Teacher Tenure Act "obviously grant[s] to the boards of education ... broad powers and discretion in the management of

**4.** The Missouri Teacher Tenure Act provides in part:

The board of education of a school district may place on leave of absence as many teachers as may be necessary because of a decrease in pupil enrollment, school district reorganization or the financial condition of the school district. In placing teachers on leave, the board of education shall be governed by the following provisions:

(1) No permanent teacher shall be placed on leave of absence while probationary teachers are retained in positions for which a permanent teacher is qualified;

(2) Permanent teachers shall be retained on the basis of performance-based evaluations and seniority (however, seniority shall not be controlling) within the field of specialization;

. . . . .

(4) No appointment of new teachers shall be made while there are available teachers on unrequested leave of absence who are properly qualified to fill such vacancies;

. . . . .

Mo.Rev.Stat. § 168.124.

school affairs"). The District's policy on Reduction in Professional Staff Work Force, incorporated into Boner's contract, lends further support for this proposition, stating that "[t]he Board of Education shall be the sole judge that one or more of the above conditions [i.e. decreased enrollment, reorganization, or financial condition] exist." *See* App. at 197.

Boner contends that genuine issues of material fact on the District's financial condition preclude summary judgment. Although the District maintained a balance of approximately $300,000 during most of the year following Boner's placement on involuntary leave, the Improvement Review required substantial reallocation of funding and personnel in order for the District to retain state accreditation and, consequently, state funding. Boner presented no evidence to contradict the superintendent's estimate that it would cost approximately $250,000 to $300,000 per year to comply with the state's directives. To help fund these requirements, the District voted to eliminate and consolidate teaching positions, including Boner's. This decision alone saved the District approximately $40,000 to $50,000.

A review of the record does not reveal that the District exceeded its authority under the Teacher Tenure Act. The District properly placed Boner on involuntary leave of absence due to financial considerations. The School Improvement Review required that the District employ only instructors certified for the positions they held. Following the consolidation of positions, Boner was not properly certified to continue as an instructor for the District.

Boner also argues that the District's financial condition served as pretext for an impermissible termination for cause. Boner cited no authority for his contention that pretext is relevant here, nor do we believe it is. As discussed above, Boner presented no evidence that the District's reasons for placing him on leave were less than legitimate. The law does not require a school district to place on leave only those employees who have im-

peccable records. Section 168.124 explicitly states that the district may place on leave "as many teachers as may be necessary." The District here has demonstrated the necessity of placing Boner on leave; Boner has failed to counter.

■ The second major issue Boner appeals is whether the District violated due process in placing him on leave. As a tenured teacher, Boner possessed a property interest in continued employment, which is subject to due process requirements. *See Board of Regents v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972); Mo.Rev.Stat. §§ 168.102–168.130.

■ At his deposition, Boner confirmed that the alleged denial of the opportunity to be heard was the sole basis for his due process claims. Boner's Dep. at 39. However, Boner does not dispute that he could have appeared before the Board at its May meeting or "whenever [he] was ready." Boner's Dep. at 10. Boner now complains that appearance before the Board would have been futile because: (1) the Board failed to provide him with the information upon which it based its decision; and (2) nothing he could have said would have changed the Board's decision. However, Boner's complaint pleads no claim regarding this alleged futility. The Board informed Boner by letter of the reasons for his dismissal and promised that further information would be forthcoming at the May meeting. The Board placed Boner on the agenda for the May meeting, and he failed to appear. He did not appear at any subsequent meeting, nor did he request to be heard at another time. Boner's Dep. at 11, 39. Due process secures only an opportunity to be heard, not guaranteed or probable success. The record makes clear that Boner did not avail himself of the opportunity to appear and make his defense.[5]

The District's policy provides that "due process shall be accomplished" by the following:

1. The employee shall be provided a written statement which is reasonably ade-

---

5. Boner's futility argument is further weakened by the fact that, in 1989, the Board decided not to rehire Boner, then a probationary teacher.

After a hearing requested by Boner, the Board rehired Boner and later granted him tenure.

quate in expressing the reason(s) for placing the employee on leave of absence without pay.

2. Likewise, the employee shall be provided with a reasonably adequate discription [sic] of the manner in which the initial decision was reached.

3. Information and data relied upon by the decision makers shall be disclosed to the employee.

4. The employee will be provided an opportunity to respond before the Board of Education.

 We affirm the district court's holding that the District met all of these requirements. *Boner,* slip op. at 6. The District sent two letters to Boner explaining the reasons for his placement on leave. Boner conversed with various District administrators regarding his placement on leave. Boner had an opportunity to be heard at the May Board meeting or "whenever [he] was ready" and there to receive additional explanation of his placement on leave. The District thus complied with its own requirements and those imposed by due process. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985) (holding that, upon termination, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story").[6] "The opportunity thus demanded was here afforded but appellant deliberately chose not to avail himself of it and not to present to the Board the arguments made to us." *Birdwell v. Hazelwood Sch. Dist.,* 491 F.2d 490, 495 (8th Cir.1974) (holding that teacher voluntarily and knowingly waived hearing requirement where he "was aware of the time and place of the Board meeting, that his continued employment was at stake, and that his dismissal was being recommended" and failed to appear). We therefore affirm the district court's holding that the District offered Boner the opportunity for a hearing

in compliance with due process. *Boner,* slip op. at 5.

Finally, Boner contends that the District breached its contract with him by failing to comply with section 168.124 and the Board's policies as set out above. Because we affirm the district court's holding that the District violated neither section 168.124, its own policies, nor due process, we also affirm the district court's holding that the District did not breach Boner's contract.

We affirm the judgment of the district court.

---

**6.** *Loudermill* addresses a termination rather than a placement on involuntary leave. The due process required for termination is necessarily more stringent than that required for placement on leave. Here, however, the District has complied with the *Loudermill* standards and has satisfied due process.