**Hazel Bledsoe SMITH d/b/a The Media, Plaintiff/Appellant,**

v.

**Randy SHERIFF, Mike Frazee, Teresa Miller, John Huffman, Stephen Otte, Gene Phillips, Mike Dunning, and Steve Krueger, Defendants/Respondents.**

**No. ED 73576.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 15, 1998.

Jean Maneke, Kansas City, for appellant.

Robert J. Krehbiel, Adrian P. Sulser, Todd L. Beekley, St. Louis, for respondent.

ROBERT E. CRIST, Senior Judge.

This case concerns the interpretation of the Open Meetings and Records Act, also known as the Sunshine Law, as set forth in Sections 610.010 *et seq.*, RSMo 1994 and Cum.Supp.1997.[1]  Plaintiff, Hazel Bledsoe Smith, operating a newspaper business called "The Media," filed suit against Randy Sheriff, superintendent of the Clark County R–1 school district, and against the individuals comprising the Board of Education for the Clark County R–1 School District (collectively called the Board).  Smith alleged the Board had purposefully violated the Sunshine Law by meeting in closed session on March 21, 1996, and March 26, 1996, and in failing to provide full information on each individual Board member's vote to rehire an employee of the district.  Smith sought a preliminary and permanent injunction enjoining the Board from holding or attending meetings in violation of the Sunshine Law and also sought the assessment of a civil fine of $500 and her costs and reasonable attorneys' fees.

Prior to a hearing on the preliminary injunction, the parties stipulated to several facts including:

> 5.  At its closed meeting of March 21, 1996, the Clark County R–1 Board of Education met with two groups totalling 47 individuals, the exact number of each group of which is unknown, one group comprised of individuals desiring to speak against the proposed re-hiring of a teacher

---

1. This law was amended in 1998 by H.B. No. 1095, West's No. 69, Sec. A. However, the amendment does not apply to the facts of this case which occurred before the effective date of the amendment.  *See, Holden v. Antom, Inc.*, 930 S.W.2d 526, 528 (Mo.App. E.D.1996).

and the other wishing to speak in favor of re-hiring of the same teacher.

6. Plaintiff was asked if she was a member of the group wishing to speak against the teacher and, when Plaintiff advised she was attending as a media representative, Plaintiff was asked to leave the closed meeting of March 21, 1996.

7. Prior to the March 21, 1996, closed meeting the Clark County R–1 Board of Education sought legal advice with respect to whether that meeting, and the subjects of discussion therein, should be held in open or closed session, from attorneys hired by the Missouri School Board Association.

8. On March 26, 1996, the Clark County R–1 Board of Education voted in closed session to hire an employee of the district.
\* \* \*

10. After the conclusion of the March 26, 1996, closed meeting the Clark County R–1 Board of Education disclosed to the public that its vote to re-hire such employee was made five in favor and two against. No further disclosure of the votes of the individual members of the Board of Education on the issue of re-hiring such employee was made by the Clark County R–1 School District. The minutes of the March 26, 1996, meeting do not reflect how each individual board member voted regarding renewal of the teacher's contract. The board minutes reflect the vote being recorded only as five in favor and two against.

On March 18, 1997, the trial court held a hearing on the preliminary injunction request. On April 30, 1997, the court issued an order, granting the preliminary injunction in part, enjoining the Board from convening any further closed meetings without strict compliance with the notice provisions of Section 610.022.2.

Both parties subsequently filed cross-motions for summary judgment. By agreement, the matter was submitted for disposition on the cross-motions for summary judgment. On November 5, 1997, the trial court entered summary judgment in favor of the Board and denied Smith's motion. The court found that the Board properly closed the meetings of March 21 and March 26, 1996. On March 21, 1996, the Board closed the meeting to discuss matters related to the hiring, firing, disciplining or promoting of a particular employee; specifically, to gather information about the job performance and merit of a teacher. Therefore, the subject matter of the meeting of March 21 fell within the parameters of Section 610.021(3). The court also found that the Board had complied with Section 610.021(3) by informing Smith and the public within 72 hours that the Board had voted 5–2 to renew the teacher's contract. The court concluded the Board was not required to reveal each individual Board member's vote because no roll call vote was taken. Smith appeals.

In Point I, Smith contends the trial court erred in entering summary judgment for the Board. Smith presents two sub-points in this first point. In sub-point I(a), Smith argues the Board's act of closing the March 21, 1996 meeting violated Section 610.021(3) because a meeting at which large numbers of the public are invited cannot be closed. Smith maintains she is therefore entitled to the imposition of a civil fine and payment of her attorneys' fees for the Board's purposeful violation of the law.

The moving party is entitled to summary judgment on a showing that there is not a genuine issue as to any material fact and that judgment should be granted as a matter of law. Rule 74.04(c)(3); *ITT Commercial Finance v. Mid–America Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). When considering an appeal from summary judgment, the court reviews the record in a light most favorable to the party against whom judgment was entered and must accord the nonmovant the benefit of all reasonable inferences therefrom. *ITT Commercial Finance,* 854 S.W.2d at 376. Our review of a summary judgment is essentially de novo and the propriety of summary judgment is purely an issue of law. *Id.; Boersig v. Missouri Dept. of Corrections,* 959 S.W.2d 454, 456 (Mo. 1997).

Here, it is undisputed that about 47 people appeared at a closed meeting of the Board to

provide information on a teacher at the school district whose re-hiring was contested. The Board divided the persons into two groups, for and against the teacher, and then met separately with each group to obtain information from them while in closed session. The Board prevented Smith from attending one of the sessions, because she was a member of the media and was not present to provide information regarding the re-hiring of the teacher.

The basic question presented to this court is whether a public governmental body may close a meeting to obtain information about the re-hiring of an employee where a significant number of the public is present in the meeting to collectively provide that information. Our review of the case law reveals no Missouri case addressing this issue, which is apparently one of first impression. Therefore, a brief examination of the history and purpose of the Sunshine Law is helpful.

In 1973, Missouri enacted its first Sunshine Law and amended it in 1978, 1982 and 1987, establishing the public policy of Missouri to be "that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public...." Section 610.011.1, RSMo 1994. As such, the law provides for wide-scale opening of public governmental activities with limited, narrowly defined exceptions as set forth currently in Section 610.021. To promote this open public policy, the legislature provided that the statutes relating to open meetings should be construed liberally and their exceptions strictly construed. Id. In Librach v. Cooper, 778 S.W.2d 351, 353 (Mo.App. E.D.1989), this Court summed up this policy as follows:

> An open society needs open institutions making open decisions openly arrived at. There are exceptions, however. These exceptions include the need to protect personal privacy when the institutional decisions significantly affect that privacy. The two needs create an obvious tension.

The Board asserts the closing of the March 21 meeting was proper because Section 610.021(3) permits the closure of meetings, records and votes regarding the "[h]iring, firing, disciplining or promoting of particular employees by a public govern-

mental body when personal information about the employee is discussed or recorded." The policy manifested by this exception is twofold: "first, to promote candid discussion by members of the governmental body in considering the listed matters; second, to protect the employee's privacy." Librach, 778 S.W.2d at 355; Brown v. Weir, 675 S.W.2d 135, 140 (Mo.App. E.D. 1984). The exception is also legislative recognition that confidentiality is essential to the conducting of certain operations by public entities. Brown, 675 S.W.2d at 140.

In Wilson v. McNeal, 575 S.W.2d 802 (Mo. App.St.L.Dist.1978), the Court addressed the issue of whether the records documenting a closed meeting should be open to the public under the Sunshine Law as it existed then. Although the legislature had not specifically addressed the issue of the duration of the exemption, the Court found no limitation on it existed. The Court stated that requiring the records to be made public would defeat the purpose of the Sunshine Law. Id. at 811. In addressing the purpose of the law, the Court stated:

> It would be impossible for school boards, for example, to obtain confidential information relating to disciplinary problems or the hiring and discharge of personnel, because once the hiring, firing or promotion was accomplished, the record would be open to the members of the public and press. Knowledgeable persons would refuse to supply facts and information because of the fear of ultimate public disclosure.

The purpose of the Sunshine Law and its exceptions indicate that it is clearly within its gamut to allow the closing of a meeting where members of the public will appear to provide confidential information to a public governmental body relating to the hiring or firing of personnel. To hold otherwise would defeat the purpose of the personnel exemption which clearly allows a public governmental body to close a meeting to obtain relevant information from knowledgeable persons. Yet, in the case at hand, there were at least 47 members of the public present and divided into two groups with which the Board met separately. Smith contends

that no more than one member of the public at a time should be allowed to appear before the Board. Otherwise, Smith argues, the purpose of the exemption is abrogated by the numbers of public admitted.

A limit on the number of the public admitted to a closed meeting to provide confidential information on personnel matters seems logical. Yet, the plain and ordinary language of the statute provides no limit on the numbers. We must construe the words used in the statute in their plain and ordinary meaning so as to promote the object and manifest purpose of the law. *Hudson v. School Dist. of Kansas City,* 578 S.W.2d 301, 307 (Mo. App. W.D.1979). As in *Wilson,* we decline to create a limitation in the statute where none exists.

The Sunshine law provides for a precarious balancing act between the public's right to know and the need to promote candid discussion and confidentiality of personnel matters. In striking this balance, we find that, under the facts of this case, the Board did not violate the Sunshine Law by inviting the public to its closed meeting to collectively provide confidential information on the re-hiring of a controversial teacher. Therefore, we find the trial court did not err in granting summary judgment in favor of the Board on this issue. Based on our holding, we need not address Smith's additional proposition that she is entitled to the imposition of a civil fine and reimbursement of her attorneys' fees for the Board's purposeful violation of the law. Sub-point I(a) is denied.

■ In sub-point I(b), Smith argues the trial court erred in granting summary judgment in favor of the Board because it violated Section 610.021(3), RSMo Cum.Supp.1997, by failing to disclose the specific votes of the individual Board members after the March 26, 1996 meeting. At the March 26 meeting, the Board voted in closed session whether to rehire the disputed teacher. The following day, Superintendent Sheriff informed Smith that the Board had voted to retain the teacher and the vote was five in favor and two against. When Smith asked Sheriff to identify the individual Board member's votes, he refused. The Board also released this same

information to the public within 72 hours of the meeting.

· Section 610.021(3) provides:

... any vote on a final decision, when taken by a public governmental body, to hire, fire, promote or discipline an employee of a public governmental body must be made available to the public within seventy-two hours of the close of the meeting where such action occurs...."

Smith argues the requirement that the Board release the "vote on any final decision" means the Board must identify the individual Board member's votes.

In response to Smith's argument, the Board contends it was not required to reveal the identity of the individual Board member's votes because a roll call vote was not taken at the March 26 meeting. The Board relies on the language of Section 610.015, RSMo Cum. Supp.1997, which states:

Except as provided in section 610.021, and except as otherwise provided by law, all votes shall be recorded, and if a roll call vote is taken, as to attribute each "yea" and "nay" vote, or abstinence if not voting, to the name of the individual member of the public governmental body, and all public meetings shall be open to the public and public votes and public records shall be open to the public for inspection and duplication.

■ Smith relies on a recent Attorney General's Opinion to support her contention that Section 610.021(3) requires the Board to release the individual votes. An Attorney General's Opinion is not binding on this court and we do not find it persuasive. *Pacific Fire Protection Dist. v. Mosley,* 939 S.W.2d 467, 470 (Mo.App. E.D.1996). Nothing in Section 610.021(3) requires that the Board identify the individual Board member's votes. This court may not add words by implication where the statute is clear and unambiguous. *Dean Machinery Co. v. Director of Revenue,* 918 S.W.2d 244, 246 (Mo. banc 1996).

■ Furthermore, in Section 610.015, the legislature provided that only *if* a roll call vote is taken, does the public body have to record each individual member's vote. We must read the provisions of an entire legisla-

tive act together and if reasonably possible harmonize all provisions. *Community Federal Sav. & Loan Ass'n v. Director of Revenue,* 752 S.W.2d 794, 798 (Mo. banc 1988). It does not seem reasonable to require revealing the individual member's votes in Section 610.021(3) when Section 610.015 would not have required it.[2] Sub-point denied.

In Point II, Smith argues the trial court erred in denying her motion seeking an order to compel the Board to produce copies of the minutes from the closed meeting of March 26, 1996, so she could determine if a roll call vote had been taken. Smith does not contest the closing of the March 26 meeting. Therefore, the minutes of that closed meeting are closed records which the Board could properly withhold from Smith. *See, State ex rel. State Bd. Of Pharmacy v. Otto,* 866 S.W.2d 480, 484–85 (Mo.App. W.D.1993); *Wolfskill v. Henderson,* 823 S.W.2d 112, 114 (Mo.App. W.D.1991). Point denied.

In light of our decision, Smith's motion for attorneys' fees taken with the case is denied. Judgment affirmed.

ROBERT G. DOWD, Jr., C.J., and KAROHL, J., concur.

Richard H. Sindel, Sindel & Sindel, P.C., Clayton, for appellant.

Evan J. Bucheim, Asst. Atty. Gen., Jefferson City, for respondent.

Before HOFF, P.J., GARY M. GAERTNER, and RHODES RUSSELL, JJ.

---

**2.** We are aware the language in Section 610.021(3) was significantly changed in the 1998 amendments to the Sunshine Law and it would now require that the individual Board member's votes be disclosed.