STATE of Missouri ex rel. Rochell
MOORE and Amy L. Hilgemann,
Respondents/Cross–Appellants,

v.

Harold BREWSTER and The Board of
Education of the City of St. Louis,
Appellants/Cross–Respondents.

No. ED 81190.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 29, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 15, 2003.

Education of the City of St. Louis ("the Board") appeal from the judgment, after a bench trial, of the Circuit Court of the City of St. Louis pursuant to a petition in mandamus seeking enforcement of the Sunshine Law, chapter 610, *et seq.*, RSMO 2000,[1] which was later amended and supplemented by a petition invoking section 162.631,[2] both of which were filed by respondents/cross-appellants, Rochell Moore ("Moore") and Amy L. Hilgemann ("Hilgemann"). The trial court ruled in favor of Moore and Hilgemann, who are both members of the Board, awarding them $11,200 in attorney's fees. Also, the trial court fined Brewster, who is the president of the Board, $100 for a purposeful violation of the Sunshine Law. Furthermore, the trial court issued a peremptory writ of mandamus and made findings, orders and declarations regarding the Board's past actions and its power and authority in the future. The trial court also unsealed and disclosed to the public several documents requested by Moore and Hilgemann from the Board and Brewster. Moore and Hilgemann filed a cross-appeal. We affirm in part, affirm as modified in part and reverse in part.[3]

In April of 2001, Moore and Hilgemann were elected to the Board. The Board is composed of seven members and oversees the City of St. Louis metropolitan school district. Subsequent to being elected, Moore and Hilgemann prepared a 47–page document entitled "Budget Recommendations." The "Budget Recommendations" document was an alternative budget for the 2002 fiscal year.

Steven L. Wright, Columbia, MO, for Appellants–Cross–Respondents.

Patrick J. McCarthy, Michael W. O'Reilly St. Louis, MO, for Respondents–Cross–Appellants.

GARY M. GAERTNER, SR., Presiding Judge.

Appellants/cross-respondents, Harold Brewster ("Brewster") and the Board of

---

**1.** All statutory references are to RSMo 2000, unless otherwise noted.

**2.** Section 162.631 confers jurisdiction over the Board to the trial court. Pursuant to 162.631.2, the jurisdiction conferred can be exercised by the filing of a petition by any member of the Board that is verified by affidavit.

**3.** Moore and Hilgemann's motion for attorney's fees in relation to this appeal is hereby denied.

At the July 5, 2001 budget meeting, a motion was made and seconded to adopt the budget recommendations of the superintendent of schools, Cleveland Hammonds ("Hammonds"). Upon discussion of the motion to approve the budget presented by Hammonds, Moore and Hilgemann were given three minutes to present their "Budget Recommendations." The majority of the Board approved the budget presented by Hammonds.

After the Board approved the budget presented by Hammonds, Moore and Hilgemann, under the assumption the approved budget could be amended, continued to distribute the "Budget Recommendations" document to those that requested it and to others within the school district. In preparing and distributing the "Budget Recommendations" document Moore and Hilgemann, at least partially, used the Board's office, resources and staff.

On July 18, 2001, Brewster, who was elected president of the Board on July 11, 2001, contacted the Board's attorney, Kenneth Brostron ("Brostron") by letter. Brewster requested an investigation of Moore and Hilgemann for violations of the Board's policies and bylaws stemming from the preparation and dissemination of their "Budget Recommendations" document. Brewster also requested a "confidential reply with recommendations for any additional action." Brewster stated that he was "fully aware that the circuit courts hold ultimate jurisdiction concerning any abuses of Board Member powers and duties." Brewster expressed a "desire to be on sound legal footing" if Brostron recommended their communication should be shared with others.

On August 16, 2001, Moore and Hilgemann, after learning of the investigation, met with Brostron and requested a copy of the letter from Brewster. Brostron refused the request because Brewster had not authorized him to disclose the information.

On August 28, 2001, Brostron sent a letter to Brewster at Brewster's home address. The letter detailed the findings of the investigation and Brostron's recommendation that no further action be taken against Moore and Hilgemann. Brostron requested permission from Brewster to forward this letter to all members of the Board to be retained confidentially.

On August 31, 2001, Brostron sent another letter to Brewster at Brewster's home address in regards to the "Confidential Investigation." Brostron stated that several members of the Board requested copies of his correspondence with Brewster. Brostron opined that Brewster was "not specifically required to provide the Board members with copies of the correspondence, however, [Brewster] should report to them the general conclusion of the investigation." Again, Brostron stated it was his "recommendation that [Brewster] deliver the [investigation] report to all Board Members."

On September 4, 2001, during a closed executive session of the Board for a discussion of legal and personnel matters, a resolution, which called for the investigation of the conduct and character of Moore and Hilgemann was passed by a majority of the Board. Subsequent to the passage of the resolution, Moore delivered a written request to Brewster, pursuant to the Sunshine Law, for his original letter to Brostron calling for an investigation and the final report of the investigation.

On September 27, 2001, Moore and Hilgemann filed a petition in mandamus. Moore and Hilgemann requested that the Board, Brewster, or the custodian of records provide them with copies of the investigative reports and that the investigation be halted and ruled void. Also, Moore and

Hilgemann requested Brewster be found to have purposely violated the Sunshine Law. Finally, Moore and Hilgemann requested the Board and Brewster be subjected to fines, costs, and attorney's fees.

On the same day, the trial court issued a preliminary order in mandamus directing the Board and Brewster to file an answer to the petition of mandamus by October 19, 2001.

On October 11, 2001, a notice of a special meeting to be held on October 13, 2001 was posted at the Board's office and sent to the members of the Board. The notice stated a special meeting would begin as an open session, but the Board would move into a closed executive session for a discussion of legal and personnel matters.

On October 13, 2001, the Board met and moved into a closed session. During the closed session, the petition of mandamus filed by Moore and Hilgemann was discussed and the majority of the Board voted to hire an attorney and have that attorney report only to Brewster. Also, the majority of the Board voted to instruct Brewster not to disclose Brostron's "preliminary investigation letter" to any person.

On October 19, 2001, Moore and Hilgemann filed a "Verified Petition" pursuant to section 162.631.2, which, among other requests: 1) challenged the legality of the Board's meeting of October 13, 2001; 2) requested the actions taken by the Board during the meeting be declared void in violation of the Sunshine Law; 3) requested the Board and Brewster be required to account for their conduct in the management and disposition of the funds, property and business in their charge; and 4) requested the Board and Brewster be compelled to pay the public school fund all sums of money which may have been improperly transferred to others or which may have been lost or wasted by any violation of their duties or abuse of their powers.

Also on October 19, 2001, the Board and Brewster filed a motion to quash the trial court's preliminary order in mandamus and an answer to the petition in mandamus. On October 31, 2001, the Board and Brewster filed a motion to dismiss the "Verified Petition."

On November 2, 2001, the trial court issued an order that stated the "Verified Petition" would be treated as a "proposed amended and supplemental pleading." The trial court denied the Board and Brewster's motion to quash the petition in mandamus and the motion to dismiss the "Verified Petition."

Beginning on November 26, 2001, a two-day bench trial was held. Moore, Hilgemann, Brostron, Hammonds, and Brewster, among others, testified.

On March 22, 2002, the trial court issued a 24–page memorandum, order and judgment, and peremptory writ of mandamus. The trial court made numerous findings of fact and conclusions of law, which will be discussed below in relation to the specific points on appeal. Also, the trial court awarded Moore and Hilgemann $11,200 in attorney's fees. Furthermore, the trial court fined Brewster $100 for a purposeful violation of the Sunshine Law. The Board and Brewster appeal. Moore and Hilgemann cross-appeal.

■ This court's standard of review requires that we sustain the trial court's decision unless it is against the weight of the evidence, there is no substantial evidence to support it, or it erroneously declares or applies the law. *Spradlin v. City of Fulton*, 982 S.W.2d 255, 263 (Mo.banc 1998); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

■ We will address the Board and Brewster's first two points on appeal together. In their first two points on appeal, the Board and Brewster argue the trial court erred in concluding the Sunshine Law was violated by the refusal to release to Moore and Hilgemann the letters between Brewster and Brostron (collectively "the letters"). The Board and Brewster contend the letters did not constitute public records because they did not fit within the definition of a "public record" defined by the Sunshine Law. In the alternative, the Board and Brewster contend that if the letters were public records they were closed public records. We agree.[4]

■ In 1973 Missouri enacted the Sunshine Law which established the public policy of Missouri to be "that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public...." Section 610.011.1; *Smith v. Sheriff*, 982 S.W.2d 775, 778 (Mo.App. E.D. 1998). To promote this open policy, the legislature provided that the statutes relating to open meetings and records should be construed liberally and their exceptions strictly construed. *Id.*

All *public records* of public governmental bodies shall be open to the public for inspection and copying, except as otherwise provided by law. Section 610.011.1

(emphasis added). A "public governmental body" is defined as "any legislative, administrative or governmental entity created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, judicial entities when operating in an administrative capacity, or by executive order...." Section 610.010(4). Unless otherwise authorized by the Board, individual members of the Board are not empowered to act and cannot govern; therefore, because members of a body cannot act individually, an individual member of the Board would not logically fall within the definition of a "public governmental body" subject to the Sunshine Law. *Colombo v. Buford,* 935 S.W.2d 690, 698 (Mo.App.W.D.1996).

Brewster is an individual member of the Board. Under the bylaws of the Board, Brewster is vested with some special duties in his capacity as president of the Board, as is the vice-president and secretary. However, we find that Brewster, as an individual member of the Board, is not a "public governmental body." Therefore, Brewster, individually, under these circumstances, is not subject to the Sunshine Law.

■ We now examine whether the Board, as a whole, violated the Sunshine

---

4. It should be noted, the trial court ordered the Board and Brewster to deliver to Moore and Hilgemann the following "public documents": 1) the letter of July 18, 2001 from Brewster to Brostron; 2) the letter of August 28, 2001 from Brostron to Brewster; and 3) the letter of August 31, 2001 from Brostron to Brewster. The trial court attached the letters to its memorandum, order and judgment as exhibits. The letters were filed under seal and were ordered not to be disclosed to the public for a period of five days to permit the Board and Brewster to apply for a stay of the trial court's order and judgment in a higher court. Absent an intervention by a higher court, the letters were ordered unsealed.

The record on appeal reveals that the Board or Brewster applied for no stay and that there was no intervention by any court within the five days following the entry of the trial court's memorandum, order and judgment. Therefore, by order of trial court, the letters were unsealed five days following the entry of the memorandum, order and judgment. Thus, the letters have been made open to the public.

However, we are addressing whether the trial court erred in concluding the Board and Brewster's refusal to release the letters was a violation of the Sunshine Law, which is a determination we make independent from the current public status of the letters.

Law by directing Brewster not to disclose the letters to anyone.

"Public record" is defined as:

[A]ny record, whether written or electronically stored, *retained by* or of any public governmental body including any report, survey, memorandum, or other document or study prepared and presented to the public governmental body by a consultant or other professional service paid for in whole or in part by public funds.... The term 'public record' shall not include any internal memorandum or letter received or prepared by or on behalf of a member of a public governmental body consisting of advice, opinions and recommendations in connection with the deliberative decision-making process of said body, unless such records are *retained by* the public governmental body or presented at a public meeting. Section 610.010(6). (emphasis added).

Public records shall be presumed to be open unless otherwise exempt pursuant to the provisions of the Sunshine Law. Section 610.022.5.

The Missouri Supreme Court has recently found that the "ordinary meaning of the word *retain* is to 'hold or continue to hold in possession or use: continue to have, use, recognize, or accept: maintain in one's keeping.'" *Hemeyer v. KRCG–TV,* 6 S.W.3d 880 (Mo.1999) (*quoting Webster's Third New International Dictionary* 1938 (1976)(emphasis in the original)). In *Tipton v. Barton,* 747 S.W.2d 325, 329 (Mo.App. E.D.1988), this court found that billing statements prepared by the city attorney of Wentzville were retained by the mayor and members of the board of alderman because they directed the city coordinator to keep all the records belonging to the city. *Tipton,* 747 S.W.2d at 329. This court affirmed the decision of the trial court which found that the mayor, city coordinator and members of the board of alderman had legal control over the billing statements so as "to retain" them for purposes of the Sunshine Law. *Id.*

We find that the letter of August 28, 2001 from Brostron to Brewster which detailed his investigation and recommendations regarding Moore and Hilgemann was retained by the Board as it was the "preliminary investigation letter" which the Board voted to instruct Brewster not to disclose to anyone at the October 13, 2001 meeting. Pursuant to this vote the Board recognized and accepted the preliminary investigation letter and thus retained it for purposes of the Sunshine Law. The other two letters between Brewster and Brostron, dated July 18, 2001 and August 31, 2001, were never retained by the Board; therefore, neither letter was a "public record" and the Sunshine Law did not apply.

■ We must now determine if the "preliminary investigation letter," which was "retained" by the Board was closed by the Board. Section 610.021(1) states, in pertinent part, the following:

Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to *close* meetings, *records* and votes, to the extent they relate to the following:

(1) Legal actions, causes of action or litigation involving a public governmental body and any confidential or privileged communications between a public governmental body or its representatives and its attorneys. However, any minutes, vote or settlement agreement relating to legal actions, causes of action or litigation involving a public governmental body or any agent or entity representing its interests or acting on its behalf or with its authority ... shall be made public upon final disposition of the matter voted upon.... *Legal work prod-*

*uct shall be considered a closed record.* Section 610.021(1) (emphasis added).

■ It is a basic rule of statutory construction that words should be given their plain and ordinary meaning whenever possible and this court will look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result defeating the purpose of the legislature. *Spradlin,* 982 S.W.2d at 258. Generally, the word "shall" means a mandatory duty. *State ex rel. City of Blue Springs v. Rice,* 853 S.W.2d 918, 920 (Mo. banc 1993).

■ A general definition of work product, cited by the Western District, states:

Work product consists of the tangible and intangible material which reflects an attorney's efforts at investigating and preparing a case, including one's pattern of investigation, assembling of information, determination of the relevant facts, preparation of legal theories, planning of strategy, and recording of mental impressions. *State ex rel. Pharmacy State Bd. v. Otto,* 866 S.W.2d 480, 483 (Mo. App. W.D.1993) (*quoting In re Grand Jury Subpoena Dated Nov. 8, 1979,* 622 F.2d 933, 935 (6th Cir.1980)).

In this case, Brostron prepared a tangible document deemed the "preliminary investigation letter" by the Board. The letter was prepared in response to Brewster's request for an investigation regarding alleged policy and by-law violations by Moore and Hilgemann. Brewster was "aware that the circuit courts hold ultimate jurisdiction concerning any abuses of Board Member powers and duties" and Brewster anticipated a recommendation from Brostron for any additional action. We find that the "preliminary investigation letter" was legal work product, which detailed Brostron's investigation and recommendations in anticipation of a case being filed by Brewster in the "circuit courts."

The trial court also found that the letters were work product; however, it found the letters were not properly closed by the Board. Section 610.021(1) is unambiguous in stating that legal work product *shall* be considered a closed record. Thus, the "preliminary investigation letter," which was the only letter "retained" by the Board, was nevertheless a closed record pursuant to the plain language of section 610.021(1).

Therefore, the trial court erred in determining that the Board and Brewster violated the Sunshine Law by refusing to release the letters. Point granted.

Due to the way in which this case was presented to the trial court and the way it has been argued on appeal, we are compelled to address the Sunshine Law issues presented. However, it should be noted, that the trial court was correct in ordering that the Board and Brewster were permanently restrained and enjoined from withholding any document which is possessed or controlled by them in their official capacity from Moore and Hilgemann. The letters were not subject to the Sunshine Law and were therefore not open to the public. However, Moore and Hilgemann were members of the Board, which gave them access to the letters, which were prepared by the Board's attorney and the president of the Board acting in his official capacity.

■ In their next point on appeal, the Board and Brewster argue the trial court erred in directing the Board to appoint a custodian of records as required by the Sunshine Law. The Board and Brewster contend the issue was beyond the scope of the pleadings and was not tried by consent of the parties. Also, the Board and Brewster argue that there was no evidence offered to show the lack of a custodian of

records. We disagree; however, we modify the order of the trial court.

 "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 55.33(b). Pleadings may be amended by implied consent when the evidence is introduced on an issue without objection. *Mahan v. Missouri Pacific R. Co.*, 760 S.W.2d 510, 514 (Mo.App. E.D.1988). This court defers to the trial court's determinations as to the credibility of witnesses as the trial court may believe all, part, or none of any witness's testimony. *Letendre ex rel. v. Mo. State High School*, 86 S.W.3d 63, 66 (Mo. App. E.D.2002).

In this case, the trial court ordered the Board to designate a custodian of records pursuant to section 610.023.1 and to provide public notice of such designation in a prominent location at the office of the Board and on the website of the Board.

The pleadings filed by Moore and Hilgemann did not include an allegation that the Board failed to appoint a custodian of records pursuant to section 610.023.1. Hammonds testified at trial that there was no one under his supervision with the title of custodian of records. Also, Brostron testified regarding the issue of whether there was a custodian of records. Brostron never stated who the custodian of records was; however he noted it would "kind of depend[ ] on which records [a person was] asking for." None of the questions asked by Moore and Hilgemann regarding the custodian of records, nor the testimony elicited therefrom, was objected to by the Board and Brewster. Furthermore, at the close of their evidence Moore and Hilgemann "move[d] to have the pleadings amended to conform to the proof presented." The Board and Brewster again raised no objection. Therefore, we find that the issue of appointment of a custodian of records was tried by implied consent.

As far as the sufficiency of the evidence to support the finding of the trial court that a custodian of records had yet to be appointed, we defer to the trial court's determinations regarding the credibility of the witnesses. The testimony of Hammonds and Brostron support the finding that no custodian of records had been appointed by the Board.

 However, the trial court ordered the Board to not only designate a custodian of records, but to also provide public notice of such designation in a prominent location at the office of the Board and on the website of the Board. Section 610.023.1 requires only that "[t]he identity and location of a public governmental body's custodian ... be made *available upon request.*" Section 610.023.1 (emphasis added). We find that the public notice requirement ordered by the trial court is outside the scope of what is required by the Sunshine Law; therefore, the Board is only required to appoint a custodian of records and make the identity and location of the custodian available upon future requests. Point denied as modified.

 In their next point on appeal, the Board and Brewster argue the trial court erred in concluding the Board lacked the authority to investigate misconduct by members of the Board regarding compliance with the Board's policies, rules and regulations. The Board and Brewster contend there is an implied authority of the Board to enforce rules regarding its own governance. The Board and Brewster argue that this implied authority allows the Board to form an investigative committee to investigate members of the Board for possible misconduct. We agree.

It is well settled that a school board has wide discretion in its management of a

school district, but it cannot act in an arbitrary, capricious, unreasonable or unlawful manner. *Vilelle v. Reorganized School Dist. No. R–1,* 689 S.W.2d 72, 77 (Mo.App. W.D.1985); *Brown v. Weir,* 675 S.W.2d 135, 139 (Mo.App. E.D.1984). However, this discretion is subject to statutory guidelines and the powers afforded the school board are clearly comprehended within the words of the statute or which may be derived from the statute by necessary implication. *Brown,* 675 S.W.2d at 139; *Wright v. Board of Education,* 295 Mo. 466, 246 S.W. 43, 45 (Mo.1922).

According to section 162.621.1, the Board:

> [S]hall have general and supervising control, government and management of the public schools and public school property of the district in the city and shall exercise generally all powers in the administration of the public school system therein. Section 162.621.1

The Board may also provide for special and standing committees. Section 162.621.1(3). Section 162.651 states:

> All testimony taken upon *any investigation made by the board,* or in any proceedings before the board for the removal of any officer or employee of the board, or in *any investigation made by any committee of the board,* shall be under oath, which oath may be administered by the secretary, the treasurer, or any officer authorized to administer oaths. Section 162.651 (emphasis added).

However, the trial court has express jurisdiction over the Board pursuant to section 162.631 which states, in pertinent part, the following:

> 1. *The circuit court of the city has jurisdiction over the members of the board of education* and its officers to require them to *account for their official conduct in the management and disposition of the funds, property and business committed to their charge;* to order, decree and compel payment by them to the public school fund of all sums of money, and of the value of all property which may have been improperly retained by them, or transferred to others, or which may have been lost or wasted by any violation of their duties or abuse of their powers as such members or officers of the board; to suspend any member or officer from exercising his office, whensoever it appears that he has abused his trust or become disqualified; to remove any member or officer upon proof or conviction of gross misconduct or disqualification for his office; to restrain and prevent any alienation of property of the public schools by members or officers, in cases where it is threatened, or there is good reason to apprehend that it is intended to be made in fraud of the rights and interests of the public schools.
>
> 2. The jurisdiction conferred by this section shall be exercised as in ordinary cases upon petition, *filed by or at the instance of any member* or officer of the board, or at the instance of any ten citizens and householders of the city who join in the petition, verified by the affidavit of at least one of them.... Section 162.631 (emphasis added).

In this case, the trial court ordered the Board and all persons acting in concert with them to be "permanently restrained and enjoined from adopting or implementing any rule, regulation, bylaw or policy authorizing any investigation of the character and conduct of any member of [the Board]."

In light of the wide discretion conferred to the Board to manage the school district and the property of the school district coupled with the Board's ability to conduct

"any investigation" pursuant to section 162.651, we find the Board has the power to make investigations into the conduct of its members so long as the conduct in question is a matter within the jurisdiction of the Board. In fact, investigatory powers are necessary, under limited circumstances, in order to comply with the statutory powers granted the Board and as a practical matter in filing an action under section 162.631. However, investigations by the Board, just as any other act, must not be arbitrary, capricious, unreasonable or unlawful. Thus, we find the trial court did err in finding the Board lacks the authority to investigate the conduct of members of the Board. Point granted.

 In their next point on appeal,[5] the Board and Brewster argue the trial court erred in determining the October 13, 2001 meeting was illegally closed. The Board and Brewster contend the meeting was properly noticed and the Sunshine Law allows votes to be taken in closed sessions so long as the votes relate to the reasons for the closed session. We agree.

All *public meetings* of public governmental bodies shall be open to the public, except as otherwise provided by law. Section 610.011.2. (emphasis added).

"Public meeting" is defined as "any meeting of a public governmental body ... at which any public business is discussed, decided, or public policy formulated, whether corporeal or by means of communication equipment." Section 610.010(5). Section 610.022 details the procedure to close meetings and the limitations imposed on closed meetings. Section 610.022. Section 610.022 states, in pertinent part, the following:

 1. Except as set forth in subsection 2 of this section, no meeting or vote may be closed without an affirmative public vote of the majority of a quorum of the public governmental body. The vote of each member of the public governmental body on the question of closing a public meeting or vote and the specific reason for closing that public meeting or vote by reference to a specific section of this chapter shall be announced publicly at an open meeting of the governmental body and entered into the minutes.

 2. A public governmental body proposing to hold a closed meeting or vote shall give notice of the time, date and place of such closed meeting or vote and the reason for holding it by reference to the specific exception allowed pursuant to the provisions of section 610.021. Such notice shall comply with the procedures set forth in section 610.020 for notice of a public meeting.

 3. Any meeting or vote closed pursuant to section 610.021 shall be closed only to the extent necessary for the specific reason announced to justify the closed meeting or vote. Public governmental bodies shall not discuss any business in a closed meeting, record or vote which does not directly relate to the specific reason announced to justify the closed meeting or vote. Public governmental bodies holding a closed meeting must close only an existing portion of the meeting facility necessary to house the members of the public governmental body in the closed session, allowing members of the public to remain to attend any subsequent open session held by the public governmental body following the closed session. Sections 610.022.1; 610.022.2; 610.022.3.

Section 610.021 states, in pertinent part, the following:

---

**5.** Actually this point was the seventh point raised on appeal by the Board and Brewster; however, in the interest of continuity we will address it now.

Except to the extent disclosure is otherwise required by law, a public governmental body is *authorized to close meetings,* records *and votes,* to the extent they relate to the following:

> *(1) Legal actions, causes of action or litigation involving a public governmental body* and any confidential or privileged communications between a public governmental body or its representatives and its attorneys. However, any minutes, vote or settlement agreement relating to legal actions, causes of action or litigation involving a public governmental body or any agent or entity representing its interests or acting on its behalf or with its authority ... shall be made public upon final disposition of the matter voted upon.... Legal work product shall be considered a closed record. Section 610.021(1) (emphasis added).

In this case, the trial court determined that Brewster had the authority to call the October 13, 2001 meeting and proper notice was given. We agree. A quorum of the Board met and voted to move from an open session into a closed session to discuss "legal matters and litigation" and requested the press and other guests to leave the vicinity. The vote to close the meeting was announced publicly at the open meeting and entered into the minutes in compliance with section 610.022.1.

However, the trial court found that: 1) the Board's vote to retain an attorney should have been conducted in an open meeting because it was not a privileged matter; and 2) the Board's vote to close the letters should have occurred at an open meeting. Based on these two find-

ings, the trial court held the October 13, 2001 meeting was illegally closed.

We find that the trial court erred in determining the October 13, 2001 meeting was illegally closed. First, section 610.021(1) applies to the Board, which is undisputedly a public governmental body, hiring an attorney. Hiring an attorney relates to legal actions, causes of actions or litigation. The Board is authorized to close meetings or votes if they relate to legal actions, causes of action or litigation involving the Board. At the time of the October 13, 2001 meeting, a cause of action was filed against the Board and the Board was authorized to close a vote relating to that cause of action, in this case it was the vote to hire an attorney to defend it in that cause of action.

Second, section 610.021(1) also applies to the vote to close the letters.[6] Moore and Hilgemann, although they were members of the Board, filed a cause of action, which not only involved the Board, but also was against the Board. The cause of action directly related to the letters. The vote to close the "preliminary investigation letter," which occurred at the closed meeting, was proper because the vote related to a cause of action, which involved the Board.

Therefore, the trial court erred in determining the October 13, 2001 meeting was illegally closed because pursuant to section 610.021 the Board was authorized to close a meeting and votes which related to legal actions, causes of action or litigation involving the Board. Point granted.

In their next point on appeal, the Board and Brewster argue the trial court erred in finding a purposeful violation of the Sunshine Law, thereby awarding attor-

**6.** As discussed above, the Board voted to close only one of the letters, the "preliminary inves-

tigation letter."

ney's fees and assessing a $100 fine against Brewster.

Section 610.027.3 states the following:

Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has *purposely violated* [the Sunshine Law], the public governmental body or the *member shall be subject to a civil fine* in the amount of not more than five hundred dollars and the court *may order the payment by such body or member of all costs and reasonable attorney fees* to any party successfully establishing a violation of [the Sunshine Law]. Section 610.027.3 (emphasis added).

The trial court determined that Brewster purposely violated the Sunshine Law by refusing to release the letters pursuant to the Sunshine Law demand of Moore and Hilgemann and by presiding over the October 13, 2001 meeting at which an illegal vote was taken. As discussed in the previous points, we find Brewster has not violated the Sunshine Law; thus the $100 fine levied against him by the trial court for a purposeful violation is reversed.

■■■ The trial court determined a majority of the Board purposely violated the Sunshine Law by encouraging and supporting Brewster's actions and by ignoring the statutory command to designate a custodian of records. Because we find that Brewster did not purposely violate the Sunshine Law, the Board cannot be found to have purposely violated the Sunshine Law by encouraging and supporting his conduct. However, as we discussed previously, the evidence was sufficient to support a finding that the Board purposely violated the Sunshine Law by failing to appoint a custodian of records. Thus, the award of attorney's fees to Moore and Hilgemann for a purposeful violation of the Sunshine Law based solely on the failure

to appoint a custodian of records is appropriate. Therefore, the award of attorney's fees to Moore and Hilgemann for a purposeful violation of the Sunshine Law by the Board is affirmed as modified. Point granted in part and denied in part.

■■■ In their next point on appeal, the Board and Brewster argue the trial court erred in concluding that Moore and Hilgemann, in their individual capacities, had the right to use school district funds for any purpose pertaining to the operation of the school district. The Board and Brewster contend Moore and Hilgemann openly violated the reasonable rules of the Board regarding expenditures, and members of public bodies, like Moore and Hilgemann, have no right to advocate their individual positions at school district expense.

■■■ Rule 84.04(d) requires a party to cite appropriate and available precedent that supports its point relied on. *Hutchings v. Waxenberg,* 969 S.W.2d 327, 330 (Mo.App. E.D.1998). If a party on appeal does not cite any authority in support of its point relied on or fails to explain why it failed to cite any authority, then this court must deem that the party has abandoned that point. *Id.*

In this case, the Board and Brewster have failed to provide either a citation to any authority or an explanation of why they did not cite to any authority under this point. Based on these two violations of Rule 84.04(d), we find that the Board and Brewster have failed to preserve any allegation of error under this point. Point denied.

In their next point on appeal, the Board and Brewster argue the trial court erred in overruling their motion to quash the preliminary order in mandamus. The Board and Brewster contend the case was not proper for a writ of mandamus because

Moore and Hilgemann had alternative remedies and they sought relief requiring the litigation of factual and legal issues and not the enforcement of an unequivocal and presently existing right.

We have previously addressed the issues presented in the writ of mandamus. The trial court did not err in denying the motion to quash the preliminary order in mandamus. Point denied.

We will now address Moore and Hilgemann's crossappeal. We will address the first two points of the cross-appeal together concerning the amount of attorney's fees awarded by the trial court. Moore and Hilgemann request a remand for further consideration of attorney's fees because they allege the trial court erred in determining the amount awarded. We disagree.

"The amount of attorney's fees awarded is within the sound discretion of the trial court." *First State Bank of St. Charles v. Frankel*, 86 S.W.3d 161, 176 (Mo.App. E.D.2002). This court will not reverse an award of attorney's fees unless the trial court has arbitrarily arrived at the award, the award is so unreasonable that it indicates indifference and lack of proper judicial consideration, or we find the trial court abused its discretion. *Id.*

We do not find that the $11,200 awarded to Moore and Hilgemann in attorney's fees was so unreasonable that it indicates indifference and lack of proper judicial consideration nor do we find that the figure was arbitrarily arrived at. The trial court did not abuse its discretion. Point denied.

Moore and Hilgemann's third issue on cross-appeal, argues the trial court erred in failing to consider and determine the sums Brewster owed to the Board for the expenditure of the Board's funds for the investigation of Moore and Hilgemann.

Pursuant to 162.631.1, as cited above, the trial court has jurisdiction over the members of the Board to compel payment to the public school fund all sums of money transferred to others or lost or wasted by any violation of their duties or abuse of their powers as members of the Board. Section 162.631.1.

Moore and Hilgemann cite to *Antoine v. McCaffery*, 335 S.W.2d 474 (Mo.App.St. L.Dist.1960), for the proposition that the case should be remanded in order for the trial court to make a determination of Brewster's liability for improper use of public funds. *Id.* at 492. In *Antoine*, the president of the St. Louis Board of Education was removed from office for gross misconduct after he directed and caused employees of the Board to perform services on his son's private property at public expense. *Id.* at 483.

In this case, Brewster initiated the investigation by contacting Brostron and requesting an investigation and report concerning Moore and Hilgemann. As evidenced by his initial letter, Brewster was proceeding under a "desire to be on sound legal footing." The investigation entailed telephone interviews conducted by Brostron with eight employees of the Board concerning the use of the Board's property and resources by Moore and Hilgemann in their preparation and distribution of the "Budget Recommendations" document. This was directly related to the Board's power to control and manage the school district and its property. The actions of Brewster did not rise to the level of gross misconduct exhibited in *Antoine*. Based on the circumstances, we find *Antoine* to be distinguishable. The trial court did not compel Brewster to pay the public school all sums of money transferred to Brostron and neither shall we. However, as we held previously in this opinion, the power to investigate a member of the Board is a power of *the*

*Board;* therefore, individual members of the Board may not exercise this power in the future. Point denied.

In conclusion, 1) we reverse the trial court's finding that the Board and Brewster violated the Sunshine Law by their refusal to release the letters; 2) we affirm as modified the trial court's order to appoint a custodian of records; 3) we reverse the trial court's finding that the Board lacks the authority to investigate its members; 4) we reverse the $100 fine to Brewster for a "purposeful violation" of the Sunshine Law; 5) we affirm the award of attorney's fees for a "purposeful violation" of the Sunshine Law based solely on the Board's failure to appoint a custodian of records; and 6) we affirm the judgment of the trial court as to the remaining points on appeal and cross-appeal.

Based on the foregoing, we affirm in part, affirm as modified in part, and reverse in part.

KATHIANNE KNAUP CRANE and PAUL J. SIMON, SR. JJ., concur.