

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| OPIOID MASTER DISBURSEMENT TRUST II, A/K/A/ OPIOID MDT II, | ) ) ) | No. ED111765 |
| Appellant, | ) ) | Appeal from the Circuit Court of St. Louis County |
| vs. | ) ) | Honorable Richard M. Stewart |
| ACE AMERICAN INSURANCE, ET AL., | ) ) | |
| Respondents. | ) | Filed: March 5, 2024 |

### Introduction

Opioid Master Disbursement Trust II (the "Trust") appeals the trial court's judgment granting Respondents' respective motions to dismiss. The issue before this Court is whether a provision in the parties' insurance contracts requires any disputes arising under those contracts to be litigated in the courts of England or Wales.

We find that the provision in the insurance policy at issue is a clear and unambiguous statement of the parties' intent to enter into a valid forum selection clause. Since we find the provision is a valid forum selection clause and there was no evidence or argument the clause was unfair or unreasonable, the parties are bound to litigate any disputes arising from these agreements in England or Wales. As such, we find the trial court did not err in granting Respondents' motion to dismiss.

Therefore, we affirm the trial court's judgment.

**Factual and Procedural Background**

The Trust is a statutory trust created in a bankruptcy proceeding for the benefit of individuals and entities harmed by Mallinckrodt and its affiliates ("Debtors")–major producers of opioid pharmaceutical products. The Debtors were discharged from liability for the opioid mass tort claims, and their liabilities were transferred to and assumed by the Trust and other related trusts. Certain assets and rights of the Debtors were also transferred to the Trust, including the Debtors' rights to insurance coverage arising out of, relating to, or in connection with any opioid mass tort claims. Respondents Allianz Global Corporate & Specialty SE, HDI Global SE, Lloyd's of London Syndicate #1218 a/k/a Newline Syndicate 1218, and SJ Catlin Syndicate SJC 2003 (the "UK Insurers"), Respondents Aspen Insurance UK, Ltd ("Aspen"), and Insurers ACE American Insurance Company and ACE Property & Casualty Insurance Company ("ACE") (collectively "Insurers") are a subset of the various insurers providing such insurance coverage.

On June 16, 2022, the Trust filed a petition for declaratory judgment relief. Subsequently, the Trust filed its first amended petition on July 28, 2022. Therein, the Trust alleged each insurer was obligated, under their respective policies, to provide coverage in full for Debtors' liability for the opioid mass tort claims, subject only to any applicable limits of liability. The Trust sought a judgment declaring the rights and obligations of the Trust and the defendant insurers with respect to the issued insurance policies. Insurers filed their respective motions to dismiss the Trust's first amended petition[1] arguing the claims against them should be dismissed because their respective insurance policies contained or "followed form" to the following forum selection clause:

> Any dispute concerning the interpretation of the terms, conditions, limitations and/or exclusions contained herein, is understood and agreed by both the Named Insured and the Insurers to be governed by the laws of England and Wales. Each party agrees to submit to the jurisdiction of any court of competent jurisdiction

---

[1] Specifically, UK Insurers filed a motion to dismiss and Aspen and ACE Insurers filed their motions to dismiss by joinder.

2

within England and Wales and to comply with all requirements necessary to give such court jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such court.[2]

After hearing arguments on the motions, the trial court granted Insurers' respective motions to dismiss. The trial court held Missouri law applied in interpreting the forum selection clause, and the Trust had not met its heavy burden of showing the forum selection clause is unfair or unreasonable. Upon the motion of the Trust, the trial court amended its orders granting the motions to dismiss to make such orders final judgments because there was no just reason to delay the appeal.

This appeal follows.

**Standard of Review**

This Court reviews the trial court's grant of a motion to dismiss *de novo*. *Amalaco, LLC v. Butero*, 593 S.W.3d 647, 650 (Mo. App. E.D. 2019). The trial court's judgment will be affirmed if the dismissal is justified on any ground alleged in the motion. *Corel Corp. v. Ferrellgas Partners, L.P.*, 633 S.W.3d 849, 853 (Mo. App. E.D. 2021).

**Discussion**

Certification

Before this Court addresses the merits of the Trust's appeal, we must first determine, *sua sponte*, whether we have jurisdiction to review it. *See Energy Mkt. 709, LLC v. City of Chesterfield*, 614 S.W.3d 643, 647 (Mo. App. E.D. 2020). "The right to appeal is purely statutory … [and] where a statute does not give a right to appeal, no right exists." *State ex rel. Koster v. ConocoPhillips*

---

[2] We note the record on appeal did not include the pertinent insurance policies containing the forum selection clause at issue. Based on the record filed with this Court, it also appears the insurance policies at issue were not filed with the lower court; the forum selection clause was simply quoted in Insurers' motions to dismiss and the Trust's response to those motions. Nevertheless, no party objected to the clause as quoted in the pleadings or briefs on appeal. While it is best practice to file documents at issue with the reviewing court, we exercise our discretion to review this appeal without the insurance policies at issue as their absence does not hinder our ability to review the Trust's claim of error. *See Washington-Bey v. State*, 568 S.W.3d 909, 912 n.2 (Mo. App. W.D. 2019).

*Co.*, 493 S.W.3d 397, 399 (Mo. banc 2016) (quoting *Farinella v. Croft*, 922 S.W.2d 755, 756 (Mo. banc 1996)). The statutory authority to bring an appeal is found in § 512.020, which provides the judgment entered by the trial court and appealed by the parties must be a "final judgment."[3] *Wilson v. City of St. Louis*, 600 S.W.3d 763, 767 (Mo. banc 2020).

For purposes of appeal under § 512.020(5), a final judgment must: (1) be a "judgment" that resolves at least one claim in a lawsuit and establishes the rights and liabilities of the parties with respect to that claim; and (2) be "final" in that it either disposes of all claims (or the last claim) in a lawsuit or has been certified for immediate appeal pursuant to Rule 74.01(b). *Energy Mkt. 709, LLC*, 614 S.W.3d at 648. "[A] judgment is eligible for certification under Rule 74.01(b) for purposes of § 512.020(5)—and thereby satisfies the second criterion in that way—only if it disposes of a 'judicial unit' of claims" by either: (a) disposing of all claims by or against at least one party, or (b) it disposes of one or more claims that are sufficiently distinct from the claims that remain pending in the trial court. *Id.*

In the present case, the trial court entered an order and judgment granting each of the Insurers' motions to dismiss and there is no dispute the trial court's orders are a judgment. In regard to the second criterion (whether the judgment was "final"), the trial court certified the orders under Rule 74.01(b). Thus, at issue is whether the trial court's judgment was "final" and eligible for certification under Rule 74.01(b).

Here, the order and judgment granting UK Insurers' motion to dismiss was properly certified because it disposed of all the Trust's claims against the UK Insurers. In other words, the judgment granting its motion to dismiss effectively dismissed all claims against this subset of insurers. *See id.* Additionally, the orders and judgments granting ACE's and Aspen's motions to

---

[3] All references are to Mo. Rev. Stat. Cum. Supp. (2022).

4

dismiss were also eligible for certification because, even though the trial court did not dismiss all of ACE's and Aspen's policies from the case, those orders were final with respect to the dismissed claims arising from their respective insurance policies containing forum selection clauses. Thus, the judgment dismissing those claims disposes of a "judicial unit" of claims and concludes litigation with respect to those policies. *Id.* at 649 ("[A] judgment resolves a 'distinct' judicial unit if it resolves claims that do not arise 'from the same set of facts, and the same transactions and occurrences, as the counts' yet to be disposed of in the circuit court.") (quoting *Wilson*, 600 S.W.3d at 770).

Lastly, the claims related to the Insurers and their respective policies are not so intertwined with the claims remaining against the other defendant insurers that any ruling on the issue of forum would affect the remaining insurers whose policies do not contain a forum selection clause. *See id.* ("[R]esolved and unresolved claims may still be distinct even if they share some facts or circumstances.").

Accordingly, the trial court's certification was proper, and, thus, we review the Trust's point on appeal.

<u>Point I</u>

We now turn to the dispositive issue before us: whether the provision in the insurance policies is a valid forum selection clause requiring the parties to litigate their disputes in England or Wales. We find the provision in question is a clear, unambiguous forum selection clause freely agreed upon by the parties.[4]

---

[4] It is undisputed Debtors entered into these insurance contracts. This Court understands and sympathizes with the Trust that it was not an original party to the contracts, however, the Bankruptcy Court appointed the Trust to stand in the shoes of those who assented to the contracts. Accordingly, the Trust is now bound by these agreements. *See Stavrides v. Zerjav*, 848 S.W.2d 523, 528 (Mo. App. E.D. 1993); *Bonner v. Auto. Club Inter–Insurance Exchange*, 899 S.W.2d 925, 928 (Mo. App. E.D.1995).

### A. Whether the provision in the insurance policies is a forum selection clause

As to the first part of the issue, the Trust rests on the argument that the forum selection clause is permissive, and absent mandatory language, the parties are not mandated to litigate their disputes exclusively in England or Wales courts. We understand the Trust's permissive/mandatory argument to be nothing more than an assertion under the first part of the analysis that the language of the clause at issue does not bind the parties to litigate their dispute in England or Wales. Simply put, we find the provision at issue is a binding forum selection clause designating England or Wales as the forum to litigate "all matters" concerning the insurance policies.

The Trust cites to Missouri caselaw to support the application of its permissive/mandatory test and invites this Court to look at the language of the provision to interpret and determine the intent of a forum selection clause. We agree with the Trust that those cases are applicable in so far as the Court's responsibility to interpret the language and intent of the parties. However, we disagree with the proposition that the language and intent of the forum selection clause in this matter is permissive and, effectively, not binding on the parties.[5] To clarify, when a provision in a contract designates the appropriate venue for a claim to be brought, Missouri's analysis looks at the language of the provision to determine: (1) does the clause in question mandate a specific outbound venue and (2) if so, would it be unfair or unreasonable to enforce that agreement. *See High Life Sales Co. v. Brown-Forman Corp.*, 823 S.W.2d 493, 496–97 (Mo. banc 1992) (holding that, although outbound forum selection clauses were previously voided as *per se* violations of public policy, outbound forum selection clauses should be enforced unless it is unfair or

---

[5] The Trust also argues Insurers knew how to include exclusive language in their forum selection clause, but decided to use permissive language nearly identical to their standard service of suit clause. We do not address this argument because any discussion comparing the forum selection clause and the service of suit clause would serve no purpose and have no bearing on this decision.

unreasonable to do so). Therefore, we first interpret the language of the provision and determine the parties' intent.

"In interpreting an insurance contract, we must keep in mind that insurance policies are contracts; thus, the rules of contract construction apply." *Nooter Corp. v. Allianz Underwriters Ins. Co.,* 536 S.W.3d 251, 263 (Mo. App. E.D. 2017) (quoting *Doe Run Res. Corp. v. Certain Underwriters at Lloyd's London*, 400 S.W.3d 463, 474 (Mo. App. E.D. 2013)). The cardinal rule of contract interpretation is determining the parties' intent and give effect to it. *Id.* "When a contract is unambiguous on its face, we ascertain the intent of the parties based on the contract language alone." *Id.* "Language is ambiguous if it is reasonably open to different constructions." *Id.* at 264. "[W]e will only resort to canons of construction if the policy language is ambiguous. However, clear and unambiguous language will be enforced as written." *Id.* at 263–64. "Additionally, we aim to give a reasonable meaning to every provision and to avoid an interpretation that renders some provisions trivial or superfluous." *Id.* at 264.

Here, the language of the provision at issue provides: "[e]ach party agrees to submit to the jurisdiction of any court of competent jurisdiction within England and Wales and to comply with all requirements necessary to give such court jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such court." The language is clear and unambiguous that the parties "agree to submit," to an England or Wales court, and "all matters" arising out of the insurance policies "shall" be litigated in that forum. As such, the provision reflects the parties' mutual consent to designate England or Wales as the forum in which to litigate their dispute and the word "shall" indicates a mandatory duty to abide by that agreement. *See State ex rel. Moore v. Brewster*, 116 S.W.3d 630, 638 (Mo. App. E.D. 2003) ("Generally, the word 'shall' means a mandatory duty."). The provision in question is not reasonably open to different

7

constructions; the provision is unambiguously an outbound forum selection clause as it is a contractual agreement designating the appropriate venue for a claim to be brought. *See Nooter Corp.,* 536 S.W.3d at 264; *Corel Corp.*, 633 S.W.3d at 853. Giving the provision another interpretation would render the provision superfluous. Therefore, the "clear and unambiguous language will be enforced as written." *Nooter Corp.,* 536 S.W.3d at 264.

Accordingly, we find that the provision at issue is an unambiguous, valid forum selection clause and we reject the Trust's argument that the clause is permissive.

### B. Enforceability of the outbound forum selection clause

Having found that the provision at issue is a valid forum selection clause, we now turn to the second part of the issue: its enforceability. Once the existence of a valid forum selection clause was established, the Trust bore the heavy burden of showing the clause was unfair or unreasonable. Because the trust failed to satisfy their heavy burden, we find the trial court did not err in granting Insurers' motions to dismiss.

As referenced above, "forum selection clauses are contractual agreements designating the appropriate venue for a claim to be brought." *Corel Corp.*, 633 S.W.3d at 853. "Under Missouri law, forum selection clauses are *prima facie* valid." *Id.* It is well-established that "freely negotiated forum selection agreements are enforceable 'so long as doing so is neither unfair nor unreasonable.'" *GP&W Inc. v. Daibes Oil, LLC*, 497 S.W.3d 866, 869 (Mo. App. E.D. 2016) (quoting *High Life Sales Co.*, 823 S.W.2d at 497). Once a party seeking to dismiss shows the existence of a forum selection clause, the non-moving party bears the heavy burden of convincing the court he or she should not be held to the bargain because it is unfair or unreasonable. *Id.*; *Thieret Fam., LLC v. Delta Plains Servs., LLC*, 637 S.W.3d 595, 606 (Mo. App. E.D. 2021).

8

In the underlying case, Insurers injected the issue of forum by showing the existence of a forum selection clause in the policies at issue. Consequently, the Trust bore the heavy burden–as the party resisting enforcement of the forum selection clause–to show the clause is either unfair or unreasonable. *See Thieret Fam., LLC*, 637 S.W.3d at 606. The Trust, however, failed to put forth any argument or point to any evidence in the record to support that the forum selection clause is unfair or unreasonable. Specifically, the Trust failed to show the clause was unfair in that it was not neutral and reciprocal in nature or show the contract was adhesive. *See Burke v. Goodman*, 114 S.W.3d 276, 280 (Mo. App. E.D. 2003) (stating that, in determining fairness, Missouri courts consider whether or not the forum selection clause is neutral and reciprocal in nature and whether or not the contract was adhesive). It also did not claim the clause was unreasonable by showing that enforcing it would result in undue hardship. *See id*. at 281 ("[A] forum selection clause may be unreasonable if it results in undue hardship, such as a necessity to travel or transport witnesses such a distance that expenses would render access to the courts impractical").

Because the Trust did not put forth any argument, much less any evidence to meet its heavy burden of showing the forum selection clause was either unfair or unreasonable, we therefore find the trial court did not err in granting Insurers' motions to dismiss. *See State ex rel. J.C. Penney Corp. v. Schroeder*, 108 S.W.3d 112, 114 (Mo. App. E.D. 2003) (finding delivery company did not meet burden of showing that enforcement of forum selection clause in its contract with retailer was unfair or unreasonable, and thus the clause would be enforced); *see also Burke*, 114 S.W.3d at 280–82 (discussing whether the enforcement of the outbound selection clause is unfair and unreasonable and finding appellant failed to meet his heavy burden of showing that he should not be held to his bargain).

The Trust's sole point on appeal is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Michael S. Wright, Judge


John P. Torbitzky, P.J. and
James M. Dowd, J. concur.